[No. A051712. First Dist., Div. Three. Oct. 31, 1991.]

In re MARCEL N. et al., Minors.
AUGUSTA V., Petitioner and Respondent, v.
GERVASIO N., Objector and Appellant.

1008

COUNSEL

Robert T. Kawamoto for Objector and Appellant.

Elizabeth Benford for Petitioner and Respondent.

OPINION

**WHITE, P. J.**—In this case we consider whether the juvenile court has jurisdiction to entertain a petition under Civil Code section 232[1] to terminate the rights of one parent, while leaving the rights of the other intact, without a potential adoption being contemplated. We conclude that it does, but remand the action for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Augusta V. married Gervasio N. in 1981. Their son Marcel was born in November 1981, and a second son, Jason, was born in 1983. Augusta filed for dissolution of the marriage in 1984. In an uncontested proceeding the

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

marriage was dissolved and Augusta was awarded sole legal and physical custody of the children, with reasonable visitation by the father.

On April 24, 1990, Gervasio had an order to show cause issued by the domestic relations department of the San Francisco Superior Court, on his application to modify the custody and visitation order. Gervasio's supporting declaration alleged that Augusta was seriously ill and he could provide a more stable home for the children.

On May 2, 1990, Augusta petitioned the juvenile court to declare Marcel and Jason free from the custody and control of their father pursuant to section 232. The petition alleged that the minor children had been left by their father in the care and custody of their mother for a period of five years without any provision for their support and without communication from their father, with the intent on the part of their father to abandon them. The domestic relations court judge continued the hearing on the order to show cause until a disposition on the section 232 petition had been made.

Although Gervasio argued that the juvenile court was without jurisdiction to terminate his parental rights, since no adoption was contemplated, the court assumed jurisdiction and took evidence.

Augusta testified that a petition to dissolve her marriage was filed in late 1984 and was finalized in March 1985. After the dissolution was final, she received a letter from Gervasio stating that he was leaving, she should take care of the children and she would not see him again. Gervasio never visited, telephoned or communicated with the children after that time. Although he was ordered to pay $200 per month for child support pursuant to the judgment of dissolution, Augusta never received any child support from Gervasio. On cross-examination Augusta admitted that a bank account had been established in her name into which $100 to $200 was deposited every month. However, she asserted that Gervasio's mother had deposited the money.

Gervasio testified that the children stayed with him several weekends in 1985. In 1985, he paid child support by giving the cash to Augusta. Gervasio remarried and moved to Sacramento, and then Seattle. He did not directly pay child support after that time. He returned to San Francisco in October of 1988.

In November of 1985, Augusta discovered that she had leukemia and had to undergo chemotherapy. In December 1985, Marcel and Jason were sent to live with Augusta's sister in Atlanta. They remained in Georgia for one year. Jason stayed with Gervasio's family in Los Angeles for the 1987 school year.

Marcel also stayed in Los Angeles for one month in 1987. Augusta's leukemia went out of remission in late 1989 and she underwent a bone marrow transplant. While recovering from this operation, she sent Marcel and Jason to stay with her brother, who resides in Hollister.

No evidence regarding the children was presented at the hearing. The probation officer's report, dated June 21, 1990, states that Marcel is currently eight years old and Jason is seven years old. Both boys indicated that they wished to live with their mother and did not wish to move again. When questioned about visiting with their father, the boys seemed unclear in their desires. The probation officer recommended that the petition to terminate Gervasio's parental rights be dismissed.

The court found, by clear and convincing evidence, that Gervasio had left the minor children in the care and custody of Augusta for a period exceeding one year without any provision for the children's support and without communication with intent to abandon them. Making no further findings, the court ordered the children freed from the custody and control of their father. This appeal followed.

## DISCUSSION

### Jurisdiction of Juvenile Court

■ The threshold issue in the instant action is whether parental rights may be terminated pursuant to section 232, when no adoption is contemplated. Relying on section 232.6, Gervasio contends they may not. We disagree.

Section 232, subdivision (a)(1) provides that an action to terminate parental rights may be brought when "[t]he child has been left . . . by one parent in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent . . . with the intent on the part of the parent . . . to abandon the child." Section 232.6 states in relevant part: "The purpose of this chapter is to serve the welfare and best interests of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from his or her life."

In *In re Laura F.* (1983) 33 Cal.3d 826 [191 Cal.Rptr. 464, 662 P.2d 922],[2] our Supreme Court affirmed a superior court order declaring three minor

[2]*Laura F.* was a four-to-three decision, with Justice Hanson, sitting under temporary assignment, joining the majority.

children free from the custody and control of their mother. Although the parties did not raise the issue, Justice Kaus, writing for the majority, stated, "We take no issue with the proposition that the purpose of section 232 is to facilitate the adoption of minor children." (*Id.*, at p. 838.) On the other hand, he recognized there is no "authority for the proposition that termination is improper unless there is an adopting parent waiting in the wings." (*Ibid.*) In her concurring and dissenting opinion, Chief Justice Bird observed: "Even a cursory glance through the statutory scheme (Civ. Code, § 232 et seq.) reveals a clear legislative intent that parental rights are not to be terminated unless there is at least some realistic possibility that the child or children will be adopted thereafter." (*In re Laura F.*, *supra*, 33 Cal.3d at p. 840.)

In *In re Randi D.* (1989) 209 Cal.App.3d 624 [257 Cal.Rptr. 421], the case on which the court below apparently relied, the marriage of the mother and father was dissolved when the minors were approximately two and three years of age. The mother was given custody of the children and they resided with her until the time of trial. An action to sever the father's parental rights was filed by the mother's new husband, the proposed stepfather, who had filed a petition for stepparent adoption. After the trial court ordered the father's parental rights terminated but before the appeal was heard, the mother's marriage to her new husband was dissolved and the petitions for stepparent adoption were dismissed. Based on these new developments, the father sought to set aside the judgment severing his parental relationship to the minors. He argued that the only purpose behind section 232 proceedings was to facilitate the adoption of a child. In a divided opinion, the Court of Appeal rejected the argument by merely stating, without authority, that section 232, subdivision (a)(1) "contemplates severance of the parental right in such a situation without reference to whether or not adoption proceedings are pending." (*In re Randi D.*, *supra*, 209 Cal.App.3d at p. 628.) In a sharply worded dissent, Justice Wallin observed that the majority opinion was contrary to *In re Elise K.* (1982) 33 Cal.3d 138 [187 Cal.Rptr. 483, 654 P.2d 253], wherein the Supreme Court unanimously reversed a trial court judgment declaring a child free from the care and custody of her parent after learning that the child was no longer adoptable. (*In re Randi D.*, *supra*, 209 Cal.App.3d at pp. 632-633.)[3]

While there is scant reasoning for the position taken in the *Laura R.* and *Randi D.* majority opinions, we believe their view, that section 232 proceedings are not limited to situations where adoption is contemplated, is correct for several reasons.

---

[3]In *Elise K.*, the parties stipulated that the judgment be reversed. However, Justice Bird's concurring opinion stresses that "termination of parental rights is normally appropriate only when adoption is realistically contemplated." (*In re Elise K.*, *supra*, 33 Cal.3d at p. 146.)

We first note that section 232.6 states the purpose of division 1, part 3, title 2, chapter 4 of the Civil Code is to provide "the stability and security of an adoptive home when those conditions are otherwise missing." Although that may be the stated purpose of the chapter, the statute does not prohibit section 232 proceedings for other purposes. Second, if read literally, section 232 proceedings could never be used to terminate the parental rights of one parent if the second parent was providing a stable and secure home for a child. Third, to hold that a remarried mother, whose new husband wishes to adopt her child, has the ability to terminate the parental rights of the child's natural father, while a single mother does not, raises obvious equal protection problems. Accordingly, we hold that section 232 proceedings are not limited to cases where adoption is anticipated.

*Findings to Support Termination of Parental Rights*

 Gervasio contends there was insufficient evidence to support the trial court's finding that he had abandoned the minor children. We disagree.

 "To terminate parental rights on grounds of abandonment, the trial court must find intent to abandon 'by clear and convincing evidence.' [Citations.] However, '[t]hat standard is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard.' [Citation.]" (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1211 [230 Cal.Rptr. 332].) Substantial evidence appears in the present record. By his own admission Gervasio moved from San Francisco in 1986 or 1987 and did not return until October of 1988. Although he stated that he gave money to his mother for his children, he admitted that he never directly paid child support after his move from San Francisco.

A more serious problem is Gervasio's claim that the trial court failed to consider the best interests of the children, pursuant to sections 232, subdivision (b)[4] and 232.5,[5] before terminating his parental rights.

 Findings of facts are required in section 232 proceedings only if they are requested by a party to the proceeding. (*In re Randi D., supra,* 209

[4]Section 232, subdivision (b) states in pertinent part: "At all termination proceedings, the court shall consider the wishes of the child and shall act in the best interests of the child. [¶] The testimony of the minor may be taken in chambers and outside the presence of the minor's parent or parents if the minor's parent or parents are represented by counsel, the counsel is present, and any of the following circumstances exist: . . ."

[5]Section 232.5 provides: "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child. At all proceedings to declare a child free from parental custody and control, the court shall consider the wishes of the child, bearing in mind the age of the child, and shall act in the best interests of the child."

Cal.App.3d at p. 631; *Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 21, fn. 4 [155 Cal.Rptr. 406]; *In re Rose G.* (1976) 57 Cal.App.3d 406, 416 [129 Cal.Rptr. 338].) There is no evidence that Gervasio requested such findings from the trial court. However, that does not end our inquiry.

Section 232.5 has been interpreted to mean that the trial court is required to "consider" the best interests and welfare of the child before reaching a determination in a section 232 proceeding. (*In re David C.* (1984) 152 Cal.App.3d 1189, 1203 [200 Cal.Rptr. 115]; *In re Rose G., supra,* 57 Cal.App.3d at p. 415.) ▆▆ In the present case, the judgment contains no explicit finding that the termination of Gervasio's parental rights is in the best interests of the children. Moreover, given the record before us, it is difficult to see that the court even considered the best interests of the children. Although the minors were seven and eight at the time of trial, no testimony was taken in accordance with section 232, subdivision (b). The probation officer's report indicated that the boys were "unclear" about visitation with their father, but no attempt was made to clarify their wishes. No evidence was presented concerning benefits or detriment[6] to the children if their father's parental rights were terminated. In short, there was little or no information on which to base a finding on the best interests of the children.

As Augusta points out, there have been periods when relatives have had to care for the children because of Augusta's illness, and there is a real possibility that if she dies the children will have years of legal dependency ahead of them. She then concludes that, based on their father's past actions, the trial court must have considered the possibility that Augusta might die and concluded that the children would fare better with their mother's relatives.

▆▆ It is settled that an order to free a child from parental custody must rest on present circumstances as well as past acts. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 493 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220 [259 Cal.Rptr. 863].) ▆▆ The record is simply devoid of facts concerning Gervasio's present circumstances which would justify the termination of his parental rights. Accordingly, the case

---

[6]The detriment requirement of section 4600 no longer applies to section 232 proceedings. (See § 232, subd. (d); *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 133 [256 Cal.Rptr. 884]; but see *In re Baby Girl M.* (1984) 37 Cal.3d 65, 75 [207 Cal.Rptr. 309, 688 P.2d 918] [in adoption proceedings, it is error to consider best interests of child before considering whether award of custody to natural parent would be detrimental to child]; *Jermstad v. McNelis* (1989) 210 Cal.App.3d 528, 549 [258 Cal.Rptr. 519] ["to the extent that . . . *In re Baby Girl M.* rests on federal constitutional considerations it is not subject to being overturned by a legislative enactment"].)

must be remanded for further evidentiary proceedings from which the court may determine the best interests of the children.

## DISPOSITION

The order declaring Marcel N. and Jason N. freed from the custody and control of Gervasio N. is reversed. The cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

Chin, J., and Strankman, J.,* concurred.

---

*Presiding Justice of the First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.