[No. A128117. First Dist., Div. Five. Jan. 21, 2011.]

T.P., Plaintiff and Respondent, v.
T.W., Defendant and Appellant.

COUNSEL

Law Offices of Robert W. Drane and Robert W. Drane for Defendant and Appellant.

Mary R. Williams, under appointment by the Court of Appeal, for Plaintiff and Respondent.

OPINION

**BRUINIERS, J.**—In response to a paternity action initiated by T.P., T.W. filed a petition under Family Code section 7802[1] to free her child from the custody and control of T.P., the admitted biological father.[2] The trial court ruled Mother had no standing to commence such a proceeding and entered a judgment denying her petition.

Section 7841, subdivision (a) permits an "interested person" to file a petition for an order or judgment to free a minor child from the custody or control of either or both parents. Mother contends that she falls within the definition of "interested person" in this section. Father contends she does not. He argues that an "interested person" within the meaning of section 7841 is limited to a party who seeks to free a minor child from parental custody and control for purposes of adoption. As no adoption is pending or contemplated, Father asserts Mother has no standing.

We conclude that both the language of the statute and the available case law establish that Mother has standing. We will therefore reverse the judgment and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case began on November 6, 2009, when Father filed a pro se "Petition to Establish Parental Relationship" in Contra Costa County Superior Court. (See § 7630, subd. (a)(1).) On that same date, an order to show cause was issued based on Father's application and supporting declaration. Father's petition and application requested that (1) his paternity be adjudicated, (2) he

---

[1] All further undesignated statutory references are to the Family Code.

[2] To avoid any confusion that might be caused by the similarity of the parties' initials, we will refer to respondent T.P. as "Father" and appellant T.W. as "Mother." We refer to the child at issue in these proceedings as "Minor."

and Mother have joint legal and physical custody of Minor, and (3) he be allowed reasonable visitation. A hearing was set for January 26, 2010.

On January 13, 2010, Mother filed a "Response to Petition to Establish Parental Relationship" and a "Responsive Declaration to Order to Show Cause." Mother admitted Father's paternity and requested the court to make an order establishing his parentage. Mother attached to her responsive pleadings a petition to terminate Father's parental relationship,[3] a verified petition to terminate Father's parental rights, and a memorandum of points and authorities and declaration in support of her petition. She claimed Father had not seen or provided for Minor since Minor's birth six years earlier, and she requested legal and physical custody of Minor and denial of visitation to Father. Mother also asked the court to stay the proceedings on Father's petition pending determination of her petition to terminate Father's parental rights.

In her declaration, Mother stated that she had had sole legal and physical custody of Minor since Minor's birth. Mother claimed Father had left Minor in her care and had never shown any interest in either visitation or custody. Specifically, Mother declared that she, not Father, had provided for all of Minor's financial and emotional needs. According to the declaration, since Minor's birth, Father had not provided any money or gifts and had not seen Minor or inquired about Minor's well-being. Mother further averred that Father had never participated in Minor's education or medical care and that he had no parental relationship with his child. She asserted that these facts demonstrated Father had acted with an intent to abandon Minor. (§ 7822, subds. (a)(3), (b).) In none of Mother's filings did she claim that she was seeking to sever Father's parental relationship in order that Minor could be adopted.

On January 26, 2010, the court held a hearing on Father's petition to establish parental relationship. At the hearing, the trial court noted that Mother agreed Father was Minor's biological father, and it therefore granted his petition with regard to parentage. Addressing Mother's petition to terminate parental rights, the court explained it would deny the request because "that is a right that goes to the child. The child has a right to have two parents, so I am not going to grant that." Mother's counsel pointed out that Mother had requested a stay of all proceedings based on her petition to

---

[3] Mother's petition to terminate parental relationship was prepared on Judicial Council Forms, form FL-200 (rev. Jan. 1, 2003). That form is entitled "Petition to Establish Parental Relationship," but in her filing, Mother altered the title by erasing the word "Establish" and writing in the word "Terminate."

terminate parental rights, but the trial court responded that Mother had "no standing to terminate parental rights." When counsel objected that Minor's mother did have standing, the trial court replied: "No, she doesn't, sir. No, she doesn't. I am denying that. That is a right that goes to the child. I am finding him to be the parent. . . . But the child has a right to two parents. He is the biological father. Mother has no standing to terminate his right, so we will proceed as stated." Mother's counsel then indicated he might seek writ review of the court's decision.

Without hearing testimony or taking evidence, the court then entered a judgment establishing Father's parentage and denying Mother's petition to terminate parental rights. It confirmed the case for custody mediation and set a further hearing on the issues of child custody and visitation for March 9, 2010. The minute order from the March 9 hearing states, "Dad to start therapeutic process. If writ is denied minor child to start therapy." A review hearing on the status of the writ was set for May 5, 2010.

On March 29, 2010, Mother filed a notice of appeal from the judgment entered January 26, 2010, denying her petition to terminate parental rights.

## II. Discussion

Mother's principal contention is that the trial court erred in concluding she had no standing to petition for termination of Father's parental rights. Briefly stated, Mother's argument is that section 7841 provides that "[a]n interested person may file a petition under this part for an order or judgment declaring a child free from the custody and control of either or both parents." (§ 7841, subd. (a).) She asserts she is an "interested person" within the meaning of this section because she "has a direct interest in the action . . . ." (§ 7841, subd. (b).)

We agree with Mother. We will therefore reverse the judgment denying Mother's petition for lack of standing and remand the case for further proceedings. Our resolution of the standing question renders consideration of Mother's other arguments unnecessary.[4]

### A. Standard of Review

Standing is a question of law we review de novo. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656].) The question presented in this case—whether Mother

---

[4] We do not reach the question of whether Father properly disputed Mother's claim that he had abandoned Minor. We therefore deny Father's September 27, 2010 request for judicial notice of the legislative history of the statutory predecessors to section 7822.

is an "interested person" within the meaning of section 7841—is one of statutory interpretation. (See *Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [28 Cal.Rptr.3d 188].) The interpretation of statutory provisions bearing on the standing issue is a question of law. (*Ibid.*) The issue before us is thus subject to our independent review, and we are not bound by the trial court's interpretation of any of the relevant statutes. (See *Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1380, 1382–1385 [53 Cal.Rptr.3d 661] [construing the term "interested party" in § 7630].)

## B. *Standing to Petition to Free Minor Children from Parental Custody and Control*

" 'Standing' is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action." (*Said v. Jegan, supra,* 146 Cal.App.4th at p. 1382.) As is true of other actions relating to children and parentage, standing in this case is conferred by statute. (See *Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1206–1207 [92 Cal.Rptr.2d 294] [reviewing statutory standing rules in actions to determine existence or nonexistence of paternal relationship under § 7630].) Actions to free minor children from the custody and control of either or both parents are governed by sections 7800 through 7895.[5] (§ 7802.) The persons or entities authorized to file petitions in such actions are set forth in two sections of the statute, sections 7840 and 7841, but only the latter provision concerns us here.[6]

Section 7841, subdivision (a) provides that "[a]n interested person may file a petition under this part for an order or judgment declaring a child free from the custody and control of either or both parents." Subdivision (b) defines the term "interested person" as "one who has a direct interest in the action, and includes, but is not limited to, a person who has filed, or who intends to file within a period of 6 months, an adoption petition under Section 8714, 8802, or 9000, or a licensed adoption agency to whom the child has been relinquished by the other parent." (§ 7841, subd. (b).)

---

[5] The Legislature enacted the Family Code in 1992 with an effective date of January 1, 1994. (*In re J. W.* (2002) 29 Cal.4th 200, 205 [126 Cal.Rptr.2d 897, 57 P.3d 363], citing Stats. 1992, ch. 162, p. 463 et seq.) "In the process, the Legislature repealed the sections of the Civil Code governing actions to free a child from parental custody and control [citation] and reenacted these provisions without substantive change as Family Code section 7800 and following . . . ." (*In re J. W.*, at pp. 205–206.) As a consequence, many of the pertinent cases refer to the former Civil Code sections. (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 162, fn. 6 [16 Cal.Rptr.3d 754].)

[6] Section 7840, subdivisions (a)(1)–(2), (c) grant the right to file a petition to adoption agencies and certain state and county entities.

Mother contends she is an "interested person" within the meaning of this section. In response, Father argues section 7841 limits authorized petitioners to those with a direct and real interest in freeing the child for adoption. Relying heavily on the language of section 7800,[7] Father claims that "the *only legitimate purpose* of a section 7800 proceeding is to facilitate the child being adopted . . . ." (Italics added.) He also contends the recent amendment of section 7841 and the legislative history of that amendment reinforce his claim that the term "interested person" is limited to parties with a direct and real interest in seeing the child freed for adoption.

## C. *Mother Is an "Interested Person" Within the Meaning of Section 7841*

■ Whether Mother fits within the definition of "interested person" in section 7841 is ultimately a question of legislative intent. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 [3 Cal.Rptr.3d 623, 74 P.3d 726] (*Hassan*).) " 'Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law.' [Citations.]" (*In re J. W., supra,* 29 Cal.4th at p. 209.) To do so, we look first to the words of the statute itself "because they are generally the most reliable indicator of legislative intent. [Citation.]" (*Ibid.*) " 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582 [48 Cal.Rptr.3d 340] (*Ailanto Properties*).)

### 1. *The Language of the Statute*

■ The first clause of section 7841, subdivision (b) defines an " 'interested person' " as one having "a direct interest in the action. . . ." Looking solely at this portion of the definition, both language and logic would seem to compel the conclusion that Mother—a biological parent holding sole legal and physical custody of her child—is a person with a direct interest in an action to free her child from the custody and control of the child's other parent. Indeed, we find it difficult to imagine any person, other than perhaps the minor child or the other parent, who would have a *more* direct interest in the proceeding.

---

[7] Section 7800 provides: "The purpose of this part is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life."

Father, however, focuses on the remaining language of this subdivision as support for his argument. He contends the recent amendment of section 7841 demonstrates that an "interested person" is someone with a direct and real interest in the child being freed for adoption.[8] The amendment to which Father refers was enacted in 2007. (See Stats. 2007, ch. 47, § 3.) Prior to the amendment, section 7841 read: "Any interested person may file a petition under this part for an order or judgment declaring a child free from the custody and control of either or both parents." (Former § 7841.) With the 2007 amendment, the preexisting text of the statute became subdivision (a) of the section, and the word "An" was substituted for "Any." (Stats. 2007, ch. 47, § 3.) The amendment also added subdivision (b). (*Ibid.*) Father appears to construe this amendment as one intended to restrict the class of "interested persons" to those who have an interest in seeing the child freed for adoption. We disagree.

■ Father's interpretation of the amendment is inconsistent with the manner in which such statutory language is generally construed. The amendment specified that the term " 'interested person' " "*includes, but is not limited to*, a person who has filed, or who intends to file within a period of 6 months, an adoption petition under Section 8714, 8802, or 9000, or a licensed adoption agency to whom the child has been relinquished by the other parent." (§ 7841, subd. (b), italics added.) As the Supreme Court has explained, "the word 'including' in a statute is 'ordinarily a term of enlargement rather than limitation.' [Citations.]" (*Hassan, supra*, 31 Cal.4th at p. 717.) Thus, that the statute states the term " 'interested person' " now "includes" a licensed adoption agency or a person who has filed or intends to file an adoption petition indicates the Legislature's intent to *expand* the definition, not to restrict it. Moreover, "[t]he clear import of the phrase 'but is not limited to' signifies that the Legislature intended the definition . . . to be expansive and flexible." (*People v. Clark-van Brunt* (1984) 158 Cal.App.3d Supp. 8, 17 [205 Cal.Rptr. 144].) Thus, the addition of the language regarding licensed adoption agencies and petitioners for adoption does not "delineat[e] the parameters of the subject." (*Id.* at p. Supp. 18, fn. omitted.) To the contrary, this language indicates that the expressly enumerated categories of persons are simply exemplary.[9] (See *Clark-van Brunt*, at pp. Supp. 17–18.)

---

[8] Father does not specifically claim that section 7841 is ambiguous, yet he urges us to take judicial notice of the legislative history of this amendment. But we may consider a statute's legislative history only in cases of ambiguity. (*Ailanto Properties, supra*, 142 Cal.App.4th at p. 597.) As neither party argues the statutory language is ambiguous, and we ourselves detect no ambiguity, we decline Father's invitation to look to the legislative history and deny his July 27, 2010 request for judicial notice. We note that Father admits in his brief that the amendment "was not addressing the issue presented in this case . . . ."

[9] We note that other provisions of the Family Code demonstrate the Legislature's ability to define with great precision which parties have standing in proceedings of this nature. (Cf. *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th

Our reading of the statutory language leads us to conclude that Mother is an "interested person" within the meaning of section 7841. She is therefore an authorized petitioner and has standing to bring an action to free her child from Father's custody and control.

## 2. *Case Law Supports Mother's Claim of Standing.*

■ Our reading of the plain language of the statute is consistent with the case law interpreting the statutory predecessor to section 7841. (See *Grahm v. Superior Court* (2005) 132 Cal.App.4th 1193, 1197 [34 Cal.Rptr.3d 270] ["judicial interpretation of the same or substantially similar language in a predecessor statute is a useful tool of statutory construction . . ."].) Very few reported cases have considered the standing question now before us. Nevertheless, those that have addressed this issue all support the view that Mother has standing.

In *In re Eugene W.* (1972) 29 Cal.App.3d 623 [105 Cal.Rptr. 736], a social worker, in her individual capacity, filed a petition to free four minor children from the custody and control of their mentally ill mother.[10] (*Eugene W.,* at pp. 626, 630.) The mother argued the social worker lacked standing to sue and the lack of standing deprived the trial court of jurisdiction over the petition. (*Id.* at p. 630.) Division Two of this district disagreed, explaining that Civil Code former section 233 permitted any interested person to file a petition. (*Eugene W.,* at p. 630.) The court held that "an 'interested person' as used in the statute is one who has a direct, and not merely consequential, interest in the action [citation], or putting it another way, one who has a real interest in the ultimate adjudication [citation]." (*Ibid.*) The social worker's employment with the county welfare department was

---

1076, 1086 [36 Cal.Rptr.3d 650] [comparing definition of one statutory term to other definitions in same code].) For example, section 7630, subdivision (a) restricts standing to challenge the presumption of a husband's paternity to the child, the child's natural mother, or a presumed father. (*Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937 [72 Cal.Rptr.2d 871, 952 P.2d 1139].) In contrast, section 7630, subdivision (b) allows any "interested party" to bring an action to determine the existence or nonexistence of a paternal relationship presumed under section 7611, subdivision (d) or (f). (See *Dawn D. v. Superior Court,* at p. 938, fn. 5 [noting that alleged biological father would arguably qualify as "interested party" under § 7630, subd. (b), although precluded from bringing action under § 7630, subd. (a)].) We therefore have no doubt that, had it wished to do so, the Legislature could have drafted a provision that would have restricted standing in actions to free a minor child from parental custody to persons who seek to free the child for adoption.

[10] The court's brief statement of facts does not indicate that any adoption was contemplated. (*In re Eugene W., supra,* 29 Cal.App.3d at p. 626; see also *Neumann v. Melgar, supra,* 121 Cal.App.4th at p. 156 [mother filed petition to free her children from the custody and control of their biological father; adoption not mentioned].)

sufficient to establish "that she had a direct interest in the adjudication of the case." (*Id.* at p. 631.) The Court of Appeal held the trial court was "manifestly correct" to conclude the social worker was a proper person to bring the action. (*Ibid.*) It would be more than slightly anomalous if a county social worker could qualify as an "interested person," while a biological and custodial parent such as Mother could not.

More directly on point is the opinion of Division Three of this district in *In re Marcel N.* (1991) 235 Cal.App.3d 1007 [1 Cal.Rptr.2d 240] (*Marcel N.*). In that case, the mother (Augusta) and the father (Gervasio) had two children during their marriage. After their marriage was dissolved, Augusta was awarded sole physical and legal custody of the children, with Gervasio receiving reasonable visitation. (*Id.* at pp. 1009–1010.) Several years later, Gervasio applied to modify the custody and visitation order on the grounds that Augusta was seriously ill and he could provide a more stable home for his children. (*Id.* at p. 1010.) In response, Augusta filed a petition seeking to declare the minor children free from Gervasio's custody and control. Her petition alleged Gervasio had left the children with her for a period of five years without any provision for their support and without any communication from him, with the intent to abandon them. Despite Gervasio's argument that it was without jurisdiction to terminate his parental rights since no adoption was contemplated, the juvenile court took jurisdiction of the case. After taking evidence, the juvenile court found "Gervasio had left the minor children in the care and custody of Augusta for a period exceeding one year without any provision for [their] support and without communication with intent to abandon them." (*Id.* at p. 1011.) It therefore ordered the children freed from Gervasio's custody and control. (*Ibid.*)

On appeal, Division Three framed the question as "whether the juvenile court has jurisdiction to entertain a petition under Civil Code section 232 to terminate the rights of one parent, while leaving the rights of the other intact, without a potential adoption being contemplated." (*Marcel N., supra*, 235 Cal.App.3d at p. 1009, fn. omitted.) Gervasio based his contention on the language in Civil Code former section 232.6 which stated, " 'The purpose of this chapter is to serve the welfare and best interests of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from his or her life.' "[11] (*Marcel N.*, at p. 1011, quoting

---

[11] The quoted language was found in the first sentence of Civil Code former section 232.6 and has been replaced by the very similar language of current Family Code section 7800. (See fn. 7, *ante*.) The Law Revision Commission comment explains that the difference in language effected no substantive change in the statute. (See Cal. Law Revision Com. com., 29G West's Ann. Fam. Code (2004 ed.) foll. § 7800, p. 346.)

Civ. Code, former § 232.6.) As does Father here, Gervasio argued his parental rights could not be terminated when no adoption was contemplated. (*Marcel N.*, at p. 1011.)

The Court of Appeal disagreed. While acknowledging that providing the stability and security of an adoptive home was the stated purpose of the statute, it first explained that "the statute does not prohibit section 232 proceedings for other purposes." (*Marcel N., supra*, 235 Cal.App.3d at p. 1013.) Second, the court observed that if the stated purpose of the statute were read literally, then "section 232 proceedings could never be used to terminate the parental rights of one parent if the second parent was providing a stable and secure home for a child." (*Ibid.*) Finally, the court expressed concern about the "obvious equal protection problems" arising from holding "that a remarried mother, whose new husband wishes to adopt her child, has the ability to terminate the parental rights of the child's natural father, while a single mother does not . . . ." (*Ibid.*) The court therefore concluded that proceedings to free a child from parental custody and control "are not limited to cases where adoption is anticipated." (*Ibid.*)

The *Marcel N.* court discussed two cases before reaching this conclusion. The first was the California Supreme Court's opinion in *In re Laura F.* (1983) 33 Cal.3d 826 [191 Cal.Rptr. 464, 662 P.2d 922]. In that case, a mother's three children had been ordered freed from her custody and control although there was no specific proof that two of the children would be adopted or that the prospective adoption of the third would be effectuated. (*Id.* at pp. 829, 838; see *id.* at p. 840 (conc. & dis. opn. of Bird, C. J.) [pointing out that no evidence was presented to the trial court suggesting two of the children were adoptable].) Although the parties had not raised the issue, at the conclusion of its opinion regarding sufficiency of the evidence, the Supreme Court majority noted the absence of "authority for the proposition that termination is improper unless there is an adopting parent waiting in the wings." (*Id.* at pp. 830, 838.) The court in the second case, *In re Randi D.* (1989) 209 Cal.App.3d 624 [257 Cal.Rptr. 421], refused to set aside a judgment severing a biological father's parental rights to his two children after the mother's subsequent marriage dissolved and the stepfather dismissed his stepparent adoption petitions regarding the children. (*Id.* at pp. 627–628.) In a terse statement, the court concluded that Civil Code former section 232 "clearly contemplates severance of the parental right [where children have been abandoned] without reference to whether or not adoption proceedings are pending." (*In re Randi D.*, at p. 628, fn. omitted.)

 It is true that the reasoning of those few cases that have directly or indirectly considered the question before us is not extensive. All, however, have concluded that a contemplated adoption is not a sine qua non to a

petition under section 7841, thus supporting a broader definition of "interested person." In addition, the Legislature has reenacted and amended the statutory provisions at issue since these cases were decided, and it has neither repudiated their holdings nor has it expressly sought to limit proceedings to terminate a parent's rights to instances in which adoption is contemplated. When the Legislature reenacts a statute that has been judicially construed, there is a strong presumption that it adopts the construction placed on the statute by the courts. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 433 [2 Cal.Rptr.3d 699, 73 P.3d 554].) In such circumstances, the Legislature is presumed to have known of and acquiesced in the prior judicial construction. (*Ibid.*) This presumption further supports our interpretation of the statute.

 3. *Father's Counterarguments Are Unpersuasive and Unsupported by Authority.*

Faced with the authorities discussed above, Father is reduced to arguing that *Marcel N.* was wrongly decided and improperly relied on dicta from the *In re Laura F.* and *In re Randi D.* decisions, which Father considers poorly reasoned. But in *Marcel N.*, the court expressly recognized there was "scant reasoning for the position taken in the *Laura* [*F.*] and *Randi D.* majority opinions . . . ." (*Marcel N., supra*, 235 Cal.App.3d at p. 1012.) It nevertheless concluded that the view expressed in those cases—that proceedings to terminate a parent's rights are not limited to situations where adoption is contemplated—was correct based on its own analysis of the statute. (*Id.* at pp. 1012–1013.)

Significantly, Father has not cited a single case construing the term "interested person" in the manner he would have us do. Instead, Father relies on *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980 [39 Cal.Rptr.3d 365] and *In re Olivia A.* (1986) 181 Cal.App.3d 237 [226 Cal.Rptr. 382] for the proposition that a court acts in excess of its jurisdiction if it permits a proceeding to terminate parental rights to be brought for any purpose other than facilitating adoption. His reliance on these cases is misplaced. In the former case, the Court of Appeal held a mother could collaterally attack an earlier stipulated judgment terminating her parental rights, because the lower court had acted in excess of its jurisdiction when it failed to follow the prescribed statutory procedures for termination. (*In re Marriage of Jackson*, at pp. 987–994, 997–998.)

In *In re Olivia A.*, an unmarried mother who received public assistance petitioned to terminate the parental rights of the minor's father at father's

request, in an apparent attempt to allow father to avoid his support obligations. (*In re Olivia A., supra*, 181 Cal.App.3d at p. 239.) After the child was declared free from father's custody, the county government moved to vacate the order because mother's receipt of public assistance meant that her support obligations were assigned to the county as a matter of law. (*Id.* at pp. 240, 241.) The Court of Appeal held the order terminating parental rights had been properly vacated, since the county, an indispensable party, had not been served in the termination proceeding. (*Id.* at pp. 241–242.) Vacating the termination order was also appropriate because the trial court had found the termination constituted a fraud on the court, as the purpose of termination was to assist father in avoiding his obligation to support his child. (*Id.* at pp. 242–243.)

The facts of these cases differ markedly from those before us, and neither of the cases considered the proposition for which Father cites them. In short, Father has presented us with no authority to support his view that the term "interested person" in section 7841 must be limited to those persons seeking to free the minor child from parental custody for purposes of adoption. We decline to adopt such a restrictive reading of the statute, particularly when it is at odds with both our view of the plain statutory language and existing authority.[12]

## D. *Conclusion*

We hold the trial court erred in ruling Mother had no standing to petition for the termination of Father's parental rights. Because the trial court incorrectly denied Mother's petition on standing grounds, we must reverse the judgment denying her petition and remand for further proceedings. (*Librers v. Black, supra*, 129 Cal.App.4th at pp. 126–127.) By holding that Mother has standing to petition for termination of Father's parental rights, we intimate no view on the merits of the case. (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 368, fn. 3 [73 Cal.Rptr.3d 880].) Whether Mother is entitled to the relief requested in her petition is a matter to be determined by the trial court on remand. (*Ibid.*)

---

[12] Father makes a cursory argument that, unless adoption is contemplated, allowing a person to file a petition to terminate parental rights would offend due process. We decline to consider this argument, since it is not stated under a separate heading, is not sufficiently developed, and is unsupported by citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "[s]tate each point under a separate heading . . . and support each point by argument and, if possible, by citation of authority"]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [79 Cal.Rptr.3d 588] ["absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

## III. Disposition

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Jones, P. J., and Simons, J., concurred.

A petition for a rehearing was denied February 18, 2011, and respondent's petition for review by the Supreme Court was denied April 13, 2011, S191006.