Filed 5/30/14  Conservatorship of DuLac CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person and Estate of LOIS A. DULAC | |
| RALPH DULAC et al., as Coconservators, etc., | G049212 |
| Petitioners and Respondents, | (Super. Ct. No. CONPS0700236) |
| v. | O P I N I O N |
| LINDA M. JENNINGS, | |
| Objector and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Cynthia Ann Ludvigsen, Judge.  Affirmed.

Linda M. Jennings, in pro. per., for Objector and Appellant.

Law Office of Stanley W. Hodge and Stanley W. Hodge for Petitioners and Respondents.

\*          \*          \*

Linda M. Jennings appeals from the superior court's judgment terminating the conservatorship over her mother, Lois A. DuLac, and her mother's estate following her death, and from the court's order requiring Jennings to pay $850 in attorney fees for a frivolous motion. We note Division Two of the Fourth District twice struck Jennings's opening brief because it was unintelligible before accepting a third brief, and then transferred the matter to this court.

Among Jennings's numerous motions on appeal, we granted her request to continue oral argument from the March 2014 calendar in part because she did not want to travel to California during the flu season and to afford her time to file additional motions. But we set a deadline of April 1, 2014, for additional motions and denied her request to continue argument to an unspecified date after June 1, 2014. We denied each of the three motions Jennings filed by the April deadline, including multiple requests to take new evidence on appeal, to order corrections to the trial court record, and her attempt to "default" respondents on appeal because they mistakenly listed themselves as appellants in a filing, which she claimed required their dismissal for failing to have filed a notice of appeal. We now deny as unfounded Jennings's 111-page sanctions motion against respondents, on which Division Two had reserved ruling on questions of respondents' purported incorrect statement of facts in their brief and their alleged failure to address all the issues Jennings raises on appeal.

We also find no merit in Jennings's substantive appellate claims. While we are sympathetic to the pain of losing a parent effectively twice, first in the incapacity that necessitates a conservatorship and then in death, Jennings presents no cognizable appellate challenges on which we can grant relief. For example, she asserts the trial court committed or permitted a litany of procedural errors, but she never explains as a

2

prerequisite for appeal how those asserted errors aggrieve her specifically or entitle her to reversal of the judgment, which we must under the Constitution presume is substantively correct. (Cal. Const., art. VI, § 13.) Jennings also generally fails to provide pinpoint citations in her argument to show she preserved the challenges she now makes on appeal. (See *People v. Partida* (2005) 37 Cal.4th 428, 435 [lower court does not err "in failing to conduct an analysis it was not asked to conduct"].) And to the extent we are able to decipher Jennings's substantive claims, they do not provide grounds to reverse the judgment, as we explain. We therefore must affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Neither party presents a particularly helpful account of the proceedings below, but it is the appellant's burden to overcome the presumption that the judgment is correct. (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1657; see *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 ["appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"]; *People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200 ["appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived"]; see also *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["conclusory claims of error will fail"].)

In light of the parties' failings in sketching the record, we note some basic facts and turn briefly to the trial court's thorough tentative decision. We do not rely on the tentative to resolve any issues on appeal, but simply as background for the reader to understand the proceedings generally.

Jennings and the respondents, Arlene Gerard Prentice and Ralph DuLac, are siblings and offspring of the conservatee in this matter, Lois DuLac (hereafter DuLac or mother). The trial court in late 2007 or early 2008 appointed Prentice and Ralph DuLac as coconservators of mother and her separate property, if any. Mother was married at the time to Leo J. DuLac, the parties' father and mother's husband of more than 60 years. Mother died in October 2009. In the meantime, however, a dispute of an uncertain nature had arisen between Jennings and the coconservators in administering the conservatorship. The trial court conducted a trial over three days in September 2010.

As the trial court explained in its tentative decision: "Many of the concerns and problems addressed at the contested hearing are, in this court's view, the result of misunderstandings among the parties and the court and lack of information and knowledge at the time certain actions were taken. [¶] A brief history is in order.

"A conservatorship over Ms. DuLac was sought on the basis that she needed assistance with her affairs. When Ms. DuLac appeared in this court, she expressed concern that she felt pressured by some of her children, including Ms. Jennings, to take certain actions regarding her life and finances and she thought that putting the two of her children she selected as conservators would insulate her from that pressure without over-burdening her husband who was in his late 90s. (At the time of trial, in September 2010, Mr. DuLac was 98 years old.) She specifically requested that she retain the right to make her own medical decisions and the court acceded to that request.

"Mr. and Mrs. DuLac were married in the 1940s. Mr. DuLac testified that when they married he and his new wife had nothing. As he put it, everything they acquired came from working, with the exception of an inheritance of five lots in Florida

4

which Mrs. DuLac received from her mother. He also testified that at various times in the 1950s, and perhaps a bit later, he put some assets in his wife's name to attempt to shield them from liability which could arise from some of the large construction contracts his business had. Later, he and his wife formed a trust and put all of their assets into the trust.

"At some point early in the conservatorship proceedings, the court [a prior trial judge, Judge Welch] instructed the co-conservators to file an[] Inventory and Appraisal which included the assets held in the trust, even though those assets were not part of the conservatorship estate. The co-conservators complied. Later, this court instructed the co-conservators to file a corrected Inventory and Appraisal to include only true conservatorship assets so as to have a correct starting point for the conservatorship estate and future accountings. [¶] . . . [¶] [A]s the [co-conservators] properly note, community property is not included within a conservatorship estate, especially where here, the other spouse is competent and capable to handle the community's affairs."

"In the meantime, the co-conservators also reported that they were under the belief that there was approximately $200,000 in cash belonging to Ms. DuLac held in banks in Montana under Ms. Jennings's name. Ms. Jennings vehemently denied that she held any of her mother's cash in her name.

"The co-conservators later dropped and corrected this assertion as they located accounts in Ms. DuLac's name in Montana and recovered those funds. The funds had been in the trust but had been removed from trust accounts by Ms. DuLac at a time when she was staying with Ms. Jennings in Montana. Although the parties dispute the circumstances of how Ms. DuLac came to stay with Ms. Jennings in Montana, those circumstances are not relevant to the issues before the court. Once the conservators

5

recovered those funds, they restored them to the trust as they had come out of the trust and both Mr. and Mrs. DuLac asked that they be returned to the trust. [T]here is no credible evidence to suggest that the funds belonged to Ms. DuLac individually and not to the trust.

"Thus, the corrected inventory filed by the co-conservators listed only the five lots in Florida which were inherited by Ms. DuLac from her mother. The probate referee valued those lots at a total of $61,000. There is no evidence to dispute that value.

"Those lots are shown in the final accounting submitted by the co-conservators. There are no other assets and there were no expenditures on behalf of the conservatee as all of her expenses prior to her death were paid from her trust which is not subject to the jurisdiction of this court. . . .

"Ms. Jennings apparently contends that there were other separate property assets which should have been included in the conservatorship estate, particularly the bank accounts in Montana and funds or properties which were transferred by her parents into her mother's name as separate property years ago, chiefly in the 1950s-70s. She cites 'The Married Woman's Property Act' as authority for her position.

"The court has addressed the Montana funds above; the [Florida] lots, according to the final accounting, remain in the conservatorship estate. . . .

"The assets which were transferred to Ms. DuLac [to shield them] as separate property in the 1950s-70s may or may not still be separate property. There is no evidence before the court that they remain separate assets; they easily could have been transmuted back to community assets and they may never have actually been separate assets as the laws of transmutation have changed numerous times in the past 60 years. Furthermore, there is no evidence that the assets were not transferred into the trust by

6

Mrs. DuLac years ago.  As the court pointed out to Ms. Jennings, it has no jurisdiction over the trust and even if separate property was transferred into the trust, its character would not automatically be transmuted.  Whether it remained separate property after being put into the trust or became community [property] depends on the terms of the trust which is not an issue before this court.

"The court overrules the objections by Linda Jennings to the co-conservators Inventory and Appraisal and to the First and Final Accounting.  The conservatorship is terminated and the co-conservators are to be discharged.  Counsel for the co-conservators is to prepare a judgment and order."  The trial court subsequently entered judgment terminating the conservatorship, and Jennings now appeals.

II

DISCUSSION

A.      *Void Judgment and Similar Claims of Fundamental Defects*

Jennings claims the judgment is void because the trial court entered it 59 days after its tentative decision, instead of within 50 days as provided in California Rules of Court, rule 3.1590(l).  That rule states that "[i]f a written judgment is required, the court must sign and file the judgment within 50 days after the announcement or service of the tentative decision . . . ."  (*Ibid.*)  But Jennings does not establish the predicate that "a written judgment [wa]s required," and even assuming one was required, she provides no authority that failure to meet the deadline divests the trial court of jurisdiction.  To the contrary, such timing rules are directory, not mandatory or jurisdictional.  (*Churchill v. Louie* (1902) 135 Cal. 608, 612; *Hume v. Lindholm* (1927) 85 Cal.App. 80, 84.)

7

Jennings similarly claims without authority that a jurisdictional defect occurred when the trial court entered a duplicate version of the judgment on January 25, 2011. The trial court acknowledged the duplicate entry, explaining it arose in the electronic conversion of the court's files, compounded by a courtroom move. Jennings, however, does not explain how she was aggrieved by this technical problem. She does not claim she suffered any prejudice in timely filing her appeal or in any other manner. To preserve scarce judicial resources and avoid needless expense, the Constitution provides that an appeal lies only to correct prejudicial error (Cal. Const., art. VI, § 13), and Jennings's claim therefore provides no grounds for reversal.

Jennings next argues in a confusing fashion that because her mother's death terminated the conservatorship "by operation of law," her death therefore had a res judicata effect that somehow precluded the trial court's entry of judgment. But Jennings does not explain how the very fact on which termination of the conservatorship is based (the person's death) precludes a formal judgment terminating the conservatorship. Nor does she explain how she is aggrieved in any legal sense by entry of a judgment terminating the conservatorship over her deceased mother.

We therefore disregard the argument. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [appellant must support each point by cogent argument]; *T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1440, fn. 12 [inchoate, undeveloped arguments are forfeited].) As other courts have observed, when an appellant divorces the argument portion of his or her brief from its factual underpinnings and supporting record citations, it is extremely difficult for an appellate court to piece together the basis for the party's claim or even what he or she intends to say. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16.) The reviewing court cannot be expected to make

8

cross-references or connections that a party simply assumes are apparent. "Issues do not have a life of their own" (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99), and therefore the court has no obligation to construct a cogent narrative or provide analysis to decipher a party's claims. Nor will we address new matters raised in an appellant's reply brief. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061-1062, fn. 7.) These rules apply with equal force to appellants appearing in propria persona. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)

We thus find mystifying Jennings's next heading and three cryptic sentences in her opening brief claiming that res judicata or collateral estoppel arising from a "second California case" controls concerning "estate matters including disposition . . . ." Jennings does not identify the other case in any fashion in her argument. It is not even clear the so-called "second" case had taken place at the time of the conservatorship, or has yet taken place, because respondents note Jennings acknowledged below that adjudication of what constituted her mother's separate or community or trust property remained "ultimately a matter for probate proceedings."

In any event, as respondents concede, they expressly "admit[ted]" below that Jennings "owes no money to the estate, to the trust, to the conservatorship. We don't want anything from her except to end the conservatorship." It is therefore difficult to grasp how Jennings is in any way aggrieved by the conservatorship proceedings or their termination. Indeed, it appears any res judicata or collateral estoppel effect in the conservatorship proceedings operates in Jennings' favor, in that nothing is required of her. We do not decide that issue, but it illustrates that there is no discernible basis for the present appeal.

9

Jennings asserts as a final jurisdictional or jurisdiction-related claim that "Jurisdiction Was Judicially Limited." (Capitalization adjusted.) The argument is incomprehensible. A representative excerpt of the argument states: "Operation of law limited my appearance. 'A judge who refuses to recuse himself . . . shall not pass upon his . . . own disqualification . . . .' . . . Judge Welch didn't file within the allowed time. He was deemed as a matter of law to have consented to his disqualification. Thus he deemed as a matter of law all matters written into the reasons for disqualification. Those included the fact my appearance was limited."

Jennings does not explain how her appearance was limited or what follows, if anything, from the limitation, how it amounted to "Judicially Limited" jurisdiction, or the relevance of this contention to her appeal. As noted, we are not required to decipher a party's opaque arguments, and we therefore deem this argument forfeited. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*) ["absence of cogent legal argument . . . allows this court to treat the contentions as waived"].)

B.      *Inventories, Appraisals, and Accounting Challenges*

Jennings raises on appeal a host of challenges to the coconservators' inventories, appraisals, and accounting concerning DuLac's property holdings during the conservatorship, but she does not in her argument provide record citations to show she preserved these claims below, nor does she explain how she is aggrieved by the alleged procedural errors. As a general rule, we consider only points raised in the trial court, and arguments asserted for the first time on appeal are therefore forfeited. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.) The alleged errors must prejudice the appealing party because review is not an academic exercise to ensure punctilious exactitude in court proceedings, but instead to correct miscarriages of justice. (See Code Civ. Proc., § 475

10

[courts must "disregard any error" not affecting a party's substantial rights; "There shall be no presumption that error is prejudicial, or that injury was done"].) Jennings's claims do not meet these standards. She therefore fails her burden on appeal (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649), and we must presume the judgment is correct in all important respects. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).)

Specifically, Jennings posits in six subheadings a plethora of alleged errors, including for example: "Inventory and [a]ppraisal laws and orders erroneously weren't followed," "Accounting laws and orders erroneously weren't followed," and "Transfers to purported trusts are procedurally not allowed." But while each subheading is clearly identified, the arguments contained in each subsection are impossible to decipher and Jennings fails her burden to specify where at trial she requested a ruling on these points or how the alleged errors prejudiced her.

For example, in the first subsection, we find the following unintelligible but typical excerpt: "November 7, 2007 Arline made unreported purported power of attorney. Arline used it to take and place Montana bank money, thereby shifting the burden, as Arline didn't conduct as conservator. Failure to make mandatory filings, instead making unreported purported papers, constitutes admissions against proper appointments." The excerpt is representative in its opacity, compounded by a failure to specify the error and resulting prejudice, if any, and by a lack of record cites to perhaps elucidate the claim and demonstrate Jennings expressly brought it to the trial court's attention for a ruling.

"We are not bound to develop appellants' arguments for them" (*Falcone*, *supra*, 164 Cal.App.4th at p. 830), and a party's status appearing in propria persona does

not allow us to overlook these deficiencies. (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1; *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.) We may not turn to the record on our own searching for error (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246) because the standard of review is to the contrary and we presume the judgment is correct. (*Denham*, *supra*, 2 Cal.3d at p. 566; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal"].) Additionally, we remain puzzled as to any conceivable prejudice Jennings suffered when the coconservators sought nothing from her except to end the conservatorship and Jennings herself conceded issues concerning her mother's property — whether separate, community, or in a trust — were properly the subject of another proceeding. In any event, the arguments as presented furnish no grounds for reversal.

C.      *Attorney Fees*

Jennings contends the trial court erred in ordering her to pay the coconservators $850 in attorney fees when they prevailed on the motion for sanctions *she* filed against them. (Code Civ. Proc., § 128.7, subd. (c)(1) ["the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion," italics added].) It is difficult to ascertain the chronology of events from Jennings's account of the fee award, and on that ground alone we may not disturb the ruling. (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 53 [failure to set forth material evidence forfeits the issue]; Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant must "[p]rovide a summary of the significant facts"].)

On the merits, it appears Jennings sought to sanction the coconservators and their attorney, Sandy Turner, for attempting to have her deemed a vexatious litigant, which the trial court denied. Not content to let the matter rest, Jennings filed her sanctions motion under Code of Civil Procedure section 128.7, apparently without realizing the statute affords a safe harbor provision of 21 days for the allegedly offending party to withdraw its assertedly frivolous or otherwise improper filing. (Code Civ. Proc., § 128.7, subd. (c)(1).) But having waited until *after* the trial court decided the vexatious litigant motion, Jennings gave the coconservators no opportunity to withdraw the motion, as provided in the safe harbor provision. The trial court therefore reasonably could conclude her motion was itself "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (*Id.*, subd. (b)(1).) Turner explained at the hearing that the coconservators had needlessly expended $1,500 to defend against Jennings's belated, retaliatory motion.

Jennings objects that in ordering her to pay $850, the trial court failed to give her the 21 days' notice required in the statute for sanctions on the court's own motion. (Code Civ. Proc., § 128.7, subd. (c)(2).) But she overlooks that the court properly made the award for attorney fees to the prevailing party on *Jennings's* failed motion (Code Civ. Proc., § 128.7, subd. (c)(1)), and not independently on the court's motion as a sanction requiring an order to show cause (*id.*, subd. (c)(2)). Jennings also complains the court ordered her to pay the funds to Turner, a nonparty, but the trial court reasonably ordered Jennings to pay the coconservators and Turner, and specifically to pay Turner on behalf of the coconservators for the attorney fees they incurred.

13

## III

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.