Filed 5/15/13  T.W. v. T.P. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **T.W.,**<br><br>　　　　**Plaintiff and Respondent,**<br><br>**v.**<br><br>**T.P.,**<br><br>　　　　**Defendant and Appellant.** | **A134575**<br><br>**(Contra Costa County<br>Super. Ct. No. D0905194)** |

This case is before us for the second time.  (See *T.P. v. T.W.* (2011) 191 Cal.App.4th 1428.)  In this appeal, T.P. (Father) challenges a judgment freeing his daughter (Minor) from his parental custody and control.  The judgment was entered in a proceeding brought by respondent T.W. (Mother) seeking a finding that Father had abandoned Minor within the meaning of Family Code section 7822.[1]  The trial court found Mother had proved the existence of all of the elements of section 7822 abandonment by clear and convincing evidence.

Father asks us to reverse the judgment for two reasons.  He first claims the trial court's failure to consider appointing independent counsel for Minor makes the judgment voidable as in excess of the trial court's jurisdiction.  He also contends the court's finding that he intended to abandon Minor is unsupported by substantial evidence.  We find neither contention persuasive and therefore affirm.

---

[1] All statutory references are to the Family Code.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were introduced in 1998. They began dating and continued to do so until August of that year, when Mother left to study nursing in Washington, D.C. After that, they dated sporadically, seeing each other on holidays and school breaks.

At some point thereafter, Mother and Father began living together in Sacramento. Mother became pregnant and gave birth to Minor in June 2003. Mother and Father were no longer living together by that time, having separated earlier in that year. Mother testified they broke up because Father "wasn't working and wasn't really making an effort to find employment to help with the finances at home." Mother remained in Sacramento until she gave birth to Minor, at which time she moved to her parents' home in Antioch, where she lived until January 2006.

Since Minor's birth in June 2003, Mother has had sole custody of Minor and has provided for all of Minor's financial, emotional, educational, and health needs. Father has not provided any such support since Minor was born.

During the period in which Mother lived with her parents, from approximately July 2003 until January 2006, Father visited Minor only once. The visit occurred in August 2003, when Minor was two months old. The visit was brief because Mother and Father began arguing after Mother asked Father if he had brought anything for Minor, such as diapers or money. Mother never sought a formal order of support, and this was the only time Mother asked Father for support for Minor. Father did not visit Mother at her parents home after August 2003, although he knew where Mother's parents lived; in addition to the August 2003 visit, he had been to the house many times while he and Mother were dating.

Mother moved out of her parents' house in January 2006, and then moved again before buying the home in which she currently lives. Mother resided in Antioch at all times, however, and at all times her telephone number and addresses were listed in the

telephone directory.[2] Father did not visit Mother or Minor at any of these residences, and Mother received no mail from him. Father did not send Minor birthday or Christmas cards. Indeed, Mother has never received any type of written communication from Father concerning Minor. Between August 2003 and October 2009, Mother received no telephone calls, messages, or voicemail from Father, and she was unaware of any communications between Father and Minor during this period. After June 2003, Mother's parents received no communications from Father, either. Mother did happen to see Father four or five times in the Antioch-Pittsburgh area where they both lived, but during these chance encounters, Father did not inquire about Minor.

Mother never refused to give Father either her home address or telephone number, and Father never asked her for her address. Although Mother was listed in the telephone directory, Father never looked in the directory or called 411 to find Mother's number. At trial, Father claimed he did not have a telephone book and did not call 411 because he thought it could be used only to find businesses and not people. Before 2008, Father did not use any computer searches in an attempt to find Mother and Minor. Father testified that in 2008, he performed a computer search and found Mother's telephone number.

In October 2009, while employed at Comcast, Father called Mother's unlisted cell phone number from a Comcast phone. He admitted to Mother he had obtained her cell phone number by looking at her Comcast file and informed her he had her address. Mother told Father it was unacceptable for him to access her file without a reason, and she explained she would be complaining to Comcast about his conduct. She did so, and Comcast terminated Father on October 31, 2009, because he had looked at computer files for personal reasons.

---

[2] The parties stipulated that Mother's telephone number and address were listed in the local phonebooks for the years 2007, 2008, and 2009. At the time of trial, Mother still had the same home telephone number she had obtained in January 2006. Mother also maintained the same cell phone number from 2003 to 2006. Father knew this number, because he claimed at trial that in 2003, he would call Mother at that number every other day and continued to do so until her number changed.

On November 6, 2009, less than one week after his termination, Father filed a petition to establish parentage over Minor. Although Father acknowledged he was angry at Mother over his termination, he claimed at trial that he did not file the petition because he was angry, but rather because someone in Comcast's human resources department had advised him to do so. In response to Father's petition, Mother filed a petition seeking to terminate Father's parental rights.[3]

The superior court granted Father's petition to establish parentage on January 26, 2010. At the same time, it denied Mother's petition to terminate Father's parental rights. As we explained in our prior opinion in this case, the superior court ruled Mother had no standing to seek termination of Father's parental rights. (*T.P. v. T.W., supra,* 191 Cal.App.4th at pp. 1431-1432.) Mother appealed from the resulting judgment, and in the prior appeal, we reversed the trial court and concluded Mother did have standing to petition for termination of Father's parental rights. (*Id.* at pp. 1430, 1434-1439, 1440.) We therefore remanded the case for further proceedings on Mother's petition. (*Id.* at pp. 1440-1441.)

After remand, the trial court referred the matter to a court investigator. (See § 7850.) The investigator conducted interviews with Mother, Father, and Minor. Minor was interviewed on July 11, 2011. After the investigator told Minor, who was eight years old at the time, "she had two dads," Minor replied, "'I don't think I have another dad. I've never seen him. I only have this dad that is in my house.'" Minor said she did not want to meet or visit with Father and expressed a desire to live with her mother. She told the investigator she was happy with her family and couldn't wait for her two parents to get married, which they did in August 2011. The investigator explained to Minor that Mother was seeking to prevent Father from being able to visit her and asked Minor what

---

[3] At the time she filed her petition, Mother was living with Eric E., whom she had met in 2005. Mother and Eric E. began living together in 2007, and he is the father of Mother's other daughter. Minor refers to Eric E. as "Daddy," and he is the only father she has known since she was approximately two years old.

4

she thought of that. Minor responded, "'Well, I don't really have another dad,'" and "said it was okay with her if the court ended [Father's] rights to visit her."

In summarizing his findings, the investigator stated Father did not pay child support or otherwise provide support for Minor, although no support was ever ordered and Mother had made no demands for support. The investigator noted that Mother had told him Father had visited Minor only once since Minor was two months old and that all subsequent contact had been the result of "random encounters around Antioch." Father, on the other hand, claimed to have visited with Minor three or four times a year. While acknowledging the facts of the case were disputed, the investigator presumed Father was telling the truth about his visits with Minor, but nevertheless concluded that Father's "communications with [Minor] appear[ed] to be only token communications." The investigator observed that Father knew Mother and Minor's address when the latter were living with Mother's parents, but during this period, Father took no steps either to establish parentage or regular visitation with his daughter. Despite Father's claim that he did not know Mother's address or telephone number, the investigator found this information was "readily accessible."

The investigator concluded that Father "does not appear to have had any meaningful contact with [Minor] for a third of her life and appears to have abandoned her for the statutory period." Since the only father Minor had known was Eric E., the investigator stated, "It does not appear to be in [Minor's] best interest to put her through a therapeutic reunification under these circumstances." The report therefore recommended that Mother's petition be granted.

The matter was tried to the court on November 2, 2011. The record does not reflect that the trial court considered whether it should exercise its discretion to appoint independent counsel for Minor. (See § 7861.) It does not appear that either party brought the issue to the court's attention.

Mother and Father both testified at the trial, and there was brief testimony by Mother's father, John W. After the close of the evidence, the court ruled orally from the bench. The court found there was "zero evidence" Father was financially unable to

5

support Minor, and it further found that the "minimal efforts" Father made to visit Minor between 2003 and 2009 showed an intent to abandon. It found Father had Mother's phone number and that he could have done a computer search to locate her as early as 2004.[4] The court ruled that Mother had established all of the elements required under section 7822, and it therefore granted her petition. It also declared Minor free for adoption.

On February 6, 2012, the court filed its written factual findings and judgment. It found Mother had established by clear and convincing evidence that Father "voluntarily left the child in [Mother's] care and custody for a period of one year without any provision for the child's support with the intent to abandon the child." It also found there was no evidence Father was unable to support Minor and that Mother had not interfered with Father's right and ability to visit his daughter. It ruled it was in Minor's best interest that Father's parental rights be terminated. The trial court declared Minor "free for purposes of adoption with no consent of [F]ather with regard to the adoption required."

Father filed a notice of appeal from the judgment on February 10, 2012. In June 2012, Father made an offer of proof to this court that Minor might have Native American ancestry. We granted his request to remand the matter without reversing the judgment so the trial court could "effectuat[e] proper inquiry and notice, if necessary, under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq." (See *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388-1390 (*Noreen G.*).)

On March 8, 2013, the superior court filed written findings on the issue of ICWA compliance.[5] Its findings state that notices were sent to the tribes designated by Father as

---

[4] The trial court found Father's testimony not credible in several respects. The trial judge refused to accept his claim that he had filed his petition to establish parentage "because somebody in HR told him he ought to," stating, "I just don't believe that." She also disbelieved his testimony "concerning having birthday cards that are signed that weren't sent to her because of a lack of address." Finally, the trial judge stated, "I don't believe he would have filed this action sooner if he had her address or phone number. It's simply not credible."

[5] On March 19, 2013, we granted Mother's motion to augment the record on appeal with the documents filed in the superior court ICWA compliance proceedings.

having a potential interest in Minor's ancestry. None of the responding tribes elected to intervene as they had found no evidence indicating that Minor has Native American ancestry. The superior court therefore ruled that the requirements of ICWA had been fulfilled, and it ordered the proceedings closed.

DISCUSSION

Father raises two issues in this appeal.[6] First, he contends the failure to appoint independent counsel for Minor requires reversal of the judgment. Second, he argues the trial court's ruling that he abandoned Minor is unsupported by substantial evidence. As we explain, we disagree with Father on both counts.

I.      *The Trial Court's Failure to Appoint Counsel for Minor Was Harmless Error.*

Father first challenges the judgment on a ground not raised below. He argues the trial court's failure to appoint counsel for Minor compels reversal of the judgment declaring Minor free from his custody and control. In his view, the failure to appoint independent counsel for his daughter renders the judgment voidable because it was in excess of the trial court's jurisdiction. Although we agree with Father that the trial court's apparent failure to consider appointing separate counsel for Minor was error, we find the error harmless.

A.      *The Trial Court Should Have Considered Appointing Counsel for Minor.*

At the beginning of a proceeding on a petition to free a child from parental custody and control, section 7860 provides that "counsel shall be appointed as provided in this article." Under section 7861, "[t]he court *shall consider* whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel." (Italics added.) Construing the statutory predecessor to section 7861, the California Supreme Court held that "in absence of a showing on the issue of the need for independent counsel for a minor, failure to

---

[6] Father's opening brief also raised the above-described issue of ICWA compliance, but that matter has now been resolved by the superior court. By letter dated March 20, 2013, Father's counsel confirmed that the trial court's March 8, 2013 findings dispose of the ICWA issue. Accordingly, we do not address it further.

appoint constitutes error." (*In re Richard E.* (1978) 21 Cal.3d 349, 354 (*Richard E.*).) Nevertheless, "failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice." (*Id*. at p. 355.)

As we have explained, "in proceedings to free a child from parental custody and control, typically each side asserts it is protecting the best interests of the child and, in the process, the court becomes fully advised of matters affecting the child's best interests." (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 170 (*Neumann*).) But "section 7861 makes clear that the court has a *non*discretionary duty to at least *consider* the appointment" of counsel for the child. (*Id*. at p. 171.) Thus, while the ultimate decision whether to appoint counsel is a matter within the trial court's discretion, where there has been no showing on the issue of whether the child's interests will be satisfactorily represented, "the court's failure to appoint counsel is deemed *erroneous*." (*Ibid*.) If the record fails to demonstrate whether there was a need to appoint independent counsel, we must conclude the failure to appoint counsel was error.[7] (*Ibid*.)

A. *We Are Bound by Richard E.*

Father therefore devotes a considerable portion of his opening brief to arguing that the prejudice requirement established in *Richard E.* is outdated and unsound. He contends the trial court's error requires reversal of the judgment without a need to examine the issue of prejudice. Confronted with unfavorable California Supreme Court authority, "Father is reduced to arguing that [*Richard E.*] was wrongly decided[.]" (*T.P. v. T.W., supra,* 191 Cal.App.4th at p. 1439.) We are not free to reconsider the holding of

---

[7] We note that Father has standing to raise the issue of the trial court's failure to consider appointment of independent counsel for Minor, because independent representation of a child's interests may impact a parent's interest in the parent-child relationship. (*Noreen G., supra,* 181 Cal.App.4th at pp. 1377-1378.) In addition, because the procedural protections afforded by section 7861 and other provisions of the same article "are all calculated to promote the best interests of the affected children," we have held that the issue of a trial court's failure to consider appointment of independent counsel may be raised for the first time on appeal. (*Neumann, supra,* 121 Cal.App.4th at p. 164.) Thus, we may consider this issue even though Father did not raise it below.

*Richard E.,* because as an inferior court, we obviously are bound by that opinion. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In any event, we have no reason to doubt the continuing vitality of *Richard E.'s* holding. As Mother points out, the California Supreme Court recently relied on the reasoning of *Richard E.* in holding that the failure to appoint separate counsel for separate siblings in a juvenile dependency proceeding was subject to harmless error review. (See *In re Celine R.* (2003) 31 Cal.4th 45, 58-59 [following *Richard E.*].) This would seem to refute Father's contention that the prejudice rule is unsound and outdated. In any event, because *Richard E.* is binding on us, any change in the prejudice rule "must come, if at all, from the California Supreme Court." (*Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 593.)

C.  *Father Does Not Explain How He or Minor Might Have Been Prejudiced by the Trial Court's Failure to Consider Appointment of Counsel for Minor.*

There is nothing in the record to indicate the trial court ever considered whether Minor's interests required the appointment of independent counsel, and "[b]ecause the record fails to demonstrate whether there was a need to appoint independent counsel, we must conclude the failure to appoint counsel was error." (*Neumann, supra,* 121 Cal.App.4th at p. 171; but see *In re Helen J.* (1973) 31 Cal.App.3d 238, 242-243 [failure of appellant to provide transcripts of relevant hearings permitted court to assume trial court had properly performed its duty and considered appointment of counsel].)[8] This does not end our inquiry, however, for under the rule announced in *Richard E., supra,* 21 Cal.3d 349, the trial court's failure to consider appointment of independent counsel for the minor child is subject to harmless error analysis. (*In re Sarah H.* (1980) 106 Cal.App.3d 326, 330.) We therefore turn to the question of harmless error.

---

[8] The record before us does not contain reporter's transcripts of a number of hearings held below. The clerk's minutes of those hearings do not reflect whether the trial court considered appointing counsel for Minor, although they do reflect that the court ordered appointment of counsel for Father.

Father does not point to any factual circumstances specific to this case demonstrating that failure to appoint counsel was prejudicial. Instead, he argues that failure to appoint counsel for a minor child cannot be deemed harmless "where, as in the instant case, the petitioner is a custodial parent and/or step-parent seeking to terminate the non-custodial parent's rights, and there is a background of the custodial parent having antagonism toward the non-custodial parent's rights to participate in the child's life[.]" In Father's view, "when the proceeding is brought by a person authorized to do so because they have their own 'interest' in freeing the child from the parent, that indicates that the child's interests will not be represented without appointment of independent counsel for the child, and therefore, in such a case, failure to appoint counsel for the child requires reversal of the judgment terminating parental rights." We disagree.

First, Father's argument fails as a factual matter. Father does not explain what he means by Mother's claimed "antagonism" to his right to participate in Minor's life, and the trial court did not appear to believe there was any such antagonism. In fact, Father's argument flies in the face of the trial court's express finding that Mother "has not interfered with [F]ather's right and ability to visit the child." The trial court also found that Father could have located Mother and Minor years before he filed his petition to establish parentage, but the court did not believe he would have filed the petition earlier if he had had their address and telephone number. Thus, there is nothing in the trial court's findings to support Father's assertion that Mother was antagonistic to his participation in Minor's life. To the extent Father seeks to base this claim on his own testimony, the trial court was not required to believe his version of events.[9] (See *In re Marriage of Jill &*

_____

[9] The only claimed evidence of antagonism between Minor's parents is Father's assertion that he and Mother agreed in mediation to a process permitting him to develop a relationship with Minor, but Mother refused to engage in that process. It appears that the process contemplated by the mediation agreement was one in which Father and Minor would participate in reunification therapy. The record does not indicate whether this process was undertaken, although the trial court's comments at a May 5, 2011 hearing suggest the court intended to permit the reunification process to go forward only if it denied Mother's petition to terminate Father's parental rights. Whatever may have occurred in this regard, we find no evidence that Mother refused to engage in the process.

10

*Victor D.* (2010) 185 Cal.App.4th 491, 506 [trial court not required to believe father's testimony regarding intent to abandon child] (*Jill & Victor D.*).)

Second, Father does not explain what interests Minor might have that were not adequately represented at trial. Instead, he simply seems to assume that because this proceeding was brought by Mother, a custodial parent, against Father, who was a noncustodial parent, Minor's interests cannot have been adequately represented. While Father complains that "lack of counsel for the child will inherently tend to result in the record not showing that the child had interests that should have been independently represented," he does not even tell us what these interests could *possibly* have been. Since Father does not identify Minor's supposed independent interests, and he does not suggest Mother has failed to provide for Minor's welfare, we will not assume Minor had unspecified interests that were not represented. (Cf. *In re Jenelle C.* (1987) 197 Cal.App.3d 813, 818-819 [where there was no suggestion that department of social services failed to take steps in furtherance of minor's welfare, trial court did not abuse discretion in failing to appoint independent counsel for minor].)

Moreover, the record contains no indication that Minor had any interest in having the petition denied. The investigator interviewed Minor about her wishes, and she expressed no desire to reunify with Father. (See *In re Mario C.* (1990) 226 Cal.App.3d 599, 607-608 [where minors expressed no interest in living with their biological mother, there was no evidence they had an interest in having termination petition denied; failure to appoint independent counsel held harmless].) Rather, Minor was happy with her family and expressed the desire to continue living with Mother. It was also undisputed that Mother and Eric E. were providing a stable and loving home for Minor and that Eric E. intended to adopt her. In these circumstances, we do not see what interest Minor might have had that was not adequately addressed by the parties' presentations below. (See *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 135 [where probation report and witness testimony agreed that minor wanted stepfather, not biological father, as his dad, failure to appoint counsel for minor was harmless].)

11

Third, even if we ignore the flawed premises of Father's argument, it nevertheless fails. Father has cited no case holding that in a freedom from custody and control proceeding, a minor child's interests can *never* be adequately represented without independent counsel if the petitioner is a custodial parent seeking to terminate the rights of a noncustodial parent. (See *T.P. v. T.W., supra,* 191 Cal.App.4th at p. 1439 [Father's legal argument rejected because he failed to cite a single case supporting it].) This is unsurprising, since the rule Father urges us to adopt would effectively require appointment of independent counsel for minor children in *all* such cases. But the case law interpreting section 7861 makes clear that the decision whether to appoint counsel for the minor child is a matter within the trial court's discretion. (See, e.g., *Richard E., supra,* 21 Cal.3d at pp. 354-355 ["The [trial] court possesses broad discretion in determining need for counsel"]; *Neumann, supra,* 121 Cal.App.4th at p. 171 ["the ultimate decision whether to appoint counsel is certainly in the lower court's discretion"].) Acceptance of Father's argument would be tantamount to eliminating the trial court's discretion in any case in which a custodial parent seeks to terminate a noncustodial parent's rights.

D.  *The Cases Upon Which Father Relies Are Distinguishable.*

Father relies on cases holding that where freedom from custody and control proceedings are instituted by a public agency, counsel for the agency can adequately represent the child's interests. (See *In re Laura F.* (1983) 33 Cal.3d 826, 839-840; *In re Jenelle C., supra,* 197 Cal.App.3d at pp. 818-819.) He seems to ask us to infer from these cases that parties other than public agencies cannot, as a matter of law, effectively represent the child's interests. In our view, no such inference is justified.

We do not quarrel with the holdings of the cited cases, but we do not read them as implying that *only* counsel for a public agency—and no one else—is capable of representing the child's interests in a freedom from custody and control proceeding. To the contrary, *Neumann, supra,* 121 Cal.App.4th 152 was a case in which the mother, the custodial parent, petitioned to free her children from their father's custody and control. (*Id*. at p. 156.) We explained that "in proceedings to free a child from parental custody

12

and control, typically each side asserts it is protecting the best interests of the child and, in the process, the court becomes fully advised of matters affecting the child's best interests." (*Id*. at p. 170.) Father does not explain why the court below would not have been adequately advised of matters affecting Minor's interests, and absent such an explanation, we are unwilling to assume the court's decision was uninformed.

Father cites a number of cases for the argument that failure to appoint independent counsel for the child can never be harmless when the proceeding is brought by a "custodial parent having antagonism toward the non-custodial parent's rights[.]" These cases do not assist him. *In re Sarah H., supra,* 106 Cal.App.3d 326 concluded that the trial court's failure to consider appointment of counsel for the children was harmless error. (*Id.* at p. 330.) Because the central issue in that case was the father's fitness to retain parental rights, and the issue was not a close one, there was no miscarriage of justice. (*Ibid*.) Likewise, in *Adoption of Michael D., supra,* 209 Cal.App.3d 122, the court concluded that failure to appoint independent counsel for the minor was harmless. (*Id*. at p. 135.) *Adoption of Jacob C.* (1994) 25 Cal.App.4th 617, upon which Father also relies, bears no resemblance to the case before us. In that case, Division Three of this district concluded the failure to appoint independent counsel for the minors was prejudicial. (*Id*. at pp. 625-626.) But there, the minors' biological mother, who had absconded with one of the children and disappeared, was barred from contesting the petitions and thus "the termination proceedings were uncontested." (*Id*. at p. 626.) The court also noted more than once that the proceeding was "unusual." (*Ibid*.) That is not the case here.

Father also seeks support from our decision in *Neumann, supra,* 121 Cal.App.4th 152, and he devotes a portion of his opening brief to a lengthy analysis and criticism of our opinion. Father's counsel perceives "un-clarity" in our decision, finds our disposition of the case "puzzling," and opines that it misstates applicable law. We do not share counsel's view.

In *Neumann,* the trial court failed to comply with a number of procedural requirements applicable to proceedings to free a minor from parental custody and control.

It did not consider the evaluator's report; it failed to interview one of the minors, although the child was 10 years old at the time of trial; and it did not consider appointment of counsel for the children. (*Neumann, supra,* 121 Cal.App.4th at pp. 168-171; see §§ 7851, subd. (d) [requiring consideration of evaluator's report]; 7891, subd. (a) [requiring in-chambers hearing with subject child who is 10 years of age or older].) We held that both the failure to consider the evaluator's report and the failure to interview one of the minors constituted "prejudicial error." (*Neumann, supra,* 121 Cal.App.4th at pp. 169, 170.) We also deemed the trial court's failure to appoint counsel erroneous (*id.* at p. 171), but we had no need to determine whether this error alone was prejudicial, since the other prejudicial errors already identified required us to vacate the judgment. We then concluded that "the trial court's *errors* compel us to vacate the judgment." (*Id.* at p. 171, italics added.) Our decision was therefore predicated upon the sum of the trial court's errors, rather than solely upon its failure to consider appointment of counsel for the minors. There is thus nothing in *Neumann* that would support Father's argument that failure to appoint counsel can never be harmless error in a freedom from parental control proceeding brought by a custodial parent who is allegedly "antagonistic" to the rights of the noncustodial parent against whom the proceeding is brought.

For the foregoing reasons, we conclude that the trial court's failure to consider appointing counsel for Minor was harmless error.

II. *Substantial Evidence Supports the Trial Court's Finding that Father Intended to Abandon Minor.*

Father contends substantial evidence does not support the trial court's finding that he intended to abandon Minor. He appears to make three separate arguments.[10] First, he contends there was insufficient evidence to support a finding that he left Minor in Mother's care and custody. Second, he argues his undisputed failure to provide any

---

[10] Contrary to the requirements of California Rules of Court, rule 8.204(a)(1)(B), Father's brief does not place these arguments under separate headings. We would therefore be justified in deeming them forfeited. (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 294.) We are not required to "consider all of the loose and disparate arguments that are not clearly set out in a heading[.]" (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.)

support for Minor during her lifetime does not evidence an intent to abandon her, because no demand for support was made and he merely acquiesced in Mother's support for Minor. Third, Father claims the trial court did not have clear and convincing evidence that his failure to communicate with Minor indicated he intended to abandon her, because the trial court allegedly did not consider the "underlying dynamics" of his relationship with Mother.

Father thus appears to contend that there is insufficient evidence to establish the first and third elements of section 7822 abandonment—that he "left" Minor with Mother and that he intended to abandon his child. (See *Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010 (*Allison C.*) [listing elements of abandonment under § 7822].) Our examination of the record reveals abundant evidence of both of these elements. We therefore reject Father's arguments.

A. *Standard of Review and Statutory Elements*

A trial court's finding of abandonment is fundamentally a question of fact and must be upheld on appeal so long as it is supported by substantial evidence. (*Allison C., supra,* 164 Cal.App.4th at pp. 1010-1011.) Although in the court below, such a determination must be made by clear and convincing evidence (§ 7821), our review is limited to determining whether substantial evidence supports the conclusions reached by the trial court in applying this standard. (*In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1211 (*B.J.B.*).)

On review for substantial evidence, "[i]t is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence. [Citations.] Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) On appeal, all conflicts in the evidence must be resolved in favor of the prevailing party and all

reasonable inferences must be indulged in to support the judgment.  (*Allison C., supra,* 164 Cal.App.4th at pp. 1010-1011.)  Father has the burden of showing the challenged finding or order is not supported by substantial evidence.  (*Id.* at p. 1011.)

As relevant here, section 7822 provides, "(a)  A proceeding under this part may be brought if any of the following occur:  [¶] . . . [¶] (3)  One parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child.  [¶] (b)  The failure to provide . . . support, or failure to communicate is presumptive evidence of the intent to abandon.  If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents."

"Thus, a section 7822 proceeding is appropriate where 'three main elements' are met:  '(1) the child must have been left with another; (2) without provision for support or without communication from . . . his parent [ ] [for the relevant period]; and (3) all of such acts are subject to the qualification that they must have been done "with the intent on the part of such parent . . . to abandon [the child].""'  (*Allison C., supra,* 164 Cal.App.4th at p. 1010.)

B.      *Substantial Evidence Supports the Finding that Father "Left" Minor.*

Father first contends the evidence is insufficient to establish that he left Minor in Mother's care.  (See § 7822, subd. (a).)  A parent leaves a child within the meaning of the statute by voluntarily surrendering the child to another person's care and custody. (*Allison C., supra,* 164 Cal.App.4th at p. 1011.)  In determining whether Father left Minor, "the focus of the law is 'on the voluntary nature of a parent's abandonment of the parental role rather than on *physical* desertion by the parent.'  [Citation.]"  (*Jill & Victor D., supra,* 185 Cal.App.4th at p. 504.)  Even where a child is effectively taken from a parent, "the parent's later voluntary inaction may constitute a leaving with intent to abandon the child.  [Citation.]"  (*Ibid.*)  Thus, if a father never seeks to take parental responsibility for his child and instead chooses to leave the child with the mother, he may

16

be found to have left the child in the mother's care and custody. (*Allison C., supra,* 164 Cal.App.4th at p. 1012.)

In this case, Mother's testimony established that Father left Minor in Mother's care around the time of Minor's birth in June 2003. Since that time, he has never provided any financial support for his daughter. (Cf. *Allison C., supra,* 164 Cal.App.4th at p. 1012 [father who gave daughter $1,100 in a three-year period failed to provide support].) After Minor's birth, Father visited her only once, when she was approximately two months old. Thereafter, Father made no attempt to contact Minor, even though he knew where she lived when she resided with Mother's parents, and even though he could easily have found Mother's address and telephone number after Mother moved out of her parents' house. (See *In re Randi D.* (1989) 209 Cal.App.3d 624, 629-630 [finding that father left minor children supported by substantial evidence where father did not communicate with children for five years].) Like Mother and Minor, Father resided in the Antioch-Pittsburgh area until shortly before trial, and he had random encounters with Mother over the years. (See *B.J.B., supra,* 185 Cal.App.3d at p. 1212 [ample evidence of intent to abandon where father and minor lived in same geographical area for relevant period].) Yet at no time prior to filing his petition in November 2009 did Father seek any parental role in Minor's life. "In other words, he was content to leave to [M]other all real parental responsibility for [Minor]." (*Allison C., supra,* 164 Cal.App.4th at p. 1012.) Since Father "voluntarily abdicated the parental role," the trial court did not err in finding he had left Minor in Mother's care and custody for the statutory period. (*Ibid*.)

Despite this evidence, Father argues that what is required to prove he "left [Minor] . . . in the care and custody of [Mother] for a period of one year" (§ 7822, subd. (a)(3)) is "a history in which [Father] deliberately left the child and rejected [M]other's attempts to get him to continue a parental relationship." He contends such a history is "exemplified" by *Amy A.* (2005) 132 Cal.App.4th 63 (*Amy A*.). Father's argument is both factually and legally flawed.

Father bases his argument on the factual claim that "[Mother] left him, taking the child with her. Thus, the child was 'taken' from him without his consent." The portions

17

of the record Father cites to *support* these claims actually *contradict* them. For example, Father cites the investigator's report of an interview with Mother, but the report clearly states, "[Mother] said [*Father*] *moved out* . . . . [S]he stayed in Sacramento and worked." (Italics added.) Father may not simply ignore this evidence as if it did not exist.[11] (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.) Much less may he rely on inaccurate representations of the evidence itself.

Father's reliance on *Amy A., supra,* 132 Cal.App.4th 63 is somewhat puzzling. In that case, the court concluded "that a parent may be found to have 'left' a child in another person's care and custody within the meaning of section 7822 even when the child moves away with the other parent." (*Id.* at p. 69.) This is precisely what occurred here. Indeed, the facts of *Amy A.* were arguably more favorable to the appellant father, because he had been deprived of legal custody by a court order in the parents' divorce proceeding. (*Id.* at p. 66.)

While Father argues his "acquiescence in [Mother's] custody does not reasonably indicate that he had a subjective intent to abandon the child," other courts have held that such voluntary abdication of the parental role is evidence that a parent has left his child in the care and custody of the other parent. (*Allison C., supra,* 164 Cal.App.4th at p. 1012; see *Jill & Victor D., supra,* 185 Cal.App.4th at p. 505 [failure to communicate with and provide support for child for a year is circumstantial evidence that father left his children].) This evidence supports the trial court's finding that Father left Minor in Mother's care and custody for the statutory period. Since the evidence also supports the findings that he failed to support Minor and failed to communicate with her (matters we discuss below), it gave rise to a presumption that Father intended to abandon Minor. (See § 7822, subd. (b) ["failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon"].)

---

[11] Father also relies heavily on his own testimony, which our standard of review requires us to discard "as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D., supra,* 70 Cal.App.4th at p. 53.)

C.      *Father's Failure to Support Minor Indicates an Intent to Abandon Her.*

Father next contends the trial court misunderstood the law when it found he had failed to provide support for Minor.  He argues no intent to abandon is shown where a parent was either unable to provide support or no demand for support was made and the parent merely acquiesces in the support provided by the child's caregiver.  Father seems to argue both of these circumstances apply here.

With regard to the issue of ability to support the child, it is undisputed that Father has never provided any financial support for Minor, and on appeal he does not claim he has.  Instead, he appears to argue he was financially unable to provide support for her, but the trial court explicitly resolved this issue against him, finding there was no evidence Father could not support his child.  In a rather surprising argument, Father blames the trial court for this lack of evidence, criticizing the court for failing to ask questions about what he calls the "non-issue of whether he had been financially unable to pay when no demand for support had been made[.]"  But it was not the trial court's function to make Father's case for him.

In arguing Mother failed to make a sufficiently clear demand for support, Father also ignores our standard of review.  Heedless of our limited function as a reviewing court, Father attempts to reargue the facts of the case.  Referring to Mother's testimony that she once "asked him if he brought anything for [Minor] in terms of diapers or money," Father suggests this "hardly indicates that [Mother] was actually asking him for child support" and claims "her testimony at trial may have been an attempt to provide support for a finding of failure to support, when the facts did not actually support such a claim."  The import and weight of this testimony were matters for the trial court.  (See *Jill & Victor D., supra,* 185 Cal.App.4th at p. 503.)  Father's undisguised attack on Mother's veracity also invites us to "pass on the credibility of witnesses," which we may not do.  (*Ibid.*)

Father seeks to excuse his undisputed failure to provide support for his daughter by referring to his own testimony that he offered to help Mother with support, but she

19

told him she did not need any.[12]  Once again, however, the trial court was not required to believe this testimony.  (*Jill & Victor D., supra,* 185 Cal.App.4th at p. 506.)  Although Father claims the trial court made no finding on whether Mother had demanded support, Father does not claim he requested any such specific finding, and thus no such finding was required.  (*In re Randi D., supra,* 209 Cal.App.3d at p. 631.)  Moreover, the trial court found Mother had proved all the elements of abandonment under section 7822.  Even assuming that a demand for support is a prerequisite to a finding of abandonment, then the trial court impliedly found Mother had demanded support, and its finding must be upheld if substantial evidence supports it.  (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793.)  Mother's testimony provides all the evidence necessary.

D.   *The "Emotional Dynamics" of the Parents' Relationship Are Irrelevant to the Issue of Father's Intent.*

Addressing the issue of his failure to communicate with Minor, Father claims the trial court should have considered the "emotional dynamics" at work in his break-up with Mother, because these dynamics "may reasonably affect the non-custodial parent's conduct in a manner that can look like lack of interest in developing or maintaining a relationship with the child."  We fail to see how such emotional dynamics are relevant to determining whether Father's failure to communicate with Minor indicates an intent to abandon her.  (See *Jill & Victor D., supra,* 185 Cal.App.4th at p. 503 [reasons why family initially broke up are irrelevant to § 7822 analysis]; *id.* at p. 508 [mother's feelings about father's failure to pay child support irrelevant to issue of father's intent].)

Furthermore, as the Second District has explained, "the reality is that parents sincerely interested in maintaining contact, whether by telephone, card or personal visit, with their children . . . will do so under ordinary circumstances in any six-month period."  (*In re Rose G.* (1976) 57 Cal.App.3d 406, 420.)  Here, the trial court expressly found that Mother had not interfered with Father's right and ability to visit his daughter.  Father

---

[12] "[A]n absence of demand may be significant to the third element of section 7822 abandonment, i.e., whether a parent *intended* to abandon a child, but not to the second element of whether a parent actually supported a child."  (*Allison C., supra,* 164 Cal.App.4th at p. 1013, fn. 8.)

simply did not exercise that right, even though Minor lived nearby.  (*B.J.B., supra,* 185 Cal.App.3d at p. 1212.)  Thus, the trial court was entitled to find that Father's efforts to contact Minor "were at best perfunctory, and it was not required to credit his protestations of continuing parental interest, particularly given the vagueness and inconsistency of his testimony."  (*Id*. at p. 1213, fn. omitted.)

E.        *No Authority Requires a Showing of Parental Unfitness Before a Child May Be Freed From Parental Custody and Control Under Section 7822.*

Finally, Father contends there can be no abandonment under section 7822 unless his conduct shows "parental unfitness."  Father cites no case decided under section 7822 or its predecessors holding that a finding of parental unfitness is required before a child may be considered abandoned.  We find this lack of authority unremarkable, because in contrast to other provisions of this part of the Family Code, section 7822 does not mention parental unfitness.  (Compare § 7822, subd. (a) [elements of abandonment] with § 7825, subd. (a)(2) [freedom from control proceeding may be brought where facts of crime of which parent was convicted "prove the unfitness of the parent"].)  We are not at liberty to add a finding of parental unfitness to the findings the Legislature has chosen to require in section 7822, and Father offers us no authority for doing so.  We thus reject this argument as legally unsupported and because it is not set forth in a separate heading.  (*In re Marriage of Carlsson, supra,* 163 Cal.App.4th at p. 294.)

21

DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.