Filed 10/26/20  In re E.F. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re E.F. et al., | |
| JOHN K.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RYAN F.,<br><br>        Defendant and Appellant. | A158796<br><br>(Contra Costa County<br>Super. Ct. Nos. A18-00030,<br>A18-00031, A18-00032) |

Ryan F. (father) appeals an order terminating his parental rights to three of his children. He contends that substantial evidence does not support the court's findings under Family Code[1] section 7825 that the facts and circumstances of his prior criminal conviction prove his unfitness to have custody of the children, and that the court abused its discretion in concluding that termination of parental rights was in his children's best interest. We find no error and shall affirm the order.

### Background

Jessica K. (mother) and father were married for 19 years. They had six biological children whom they raised along with father's eldest daughter by

_____

[1] All statutory references are to the Family Code unless otherwise noted.

1

another woman. Father's parental rights to his three youngest daughters, now ages 18, 16 and 9, are at issue in the present action.

In 2012, father was convicted of sexually abusing his eldest daughter (Pen. Code, § 289, subd. (h)) and sentenced to 16 months in prison. Shortly thereafter, mother filed for divorce and obtained a restraining order prohibiting all contact between father and his children. In 2014, petitioner John K. married mother.

Between 2013 and 2017, father repeatedly filed petitions with the family court seeking a change of custody and visitation. The court denied each of the petitions, confirming mother's sole legal and physical custody of the children. However, in April 2016, the court ordered mother to secure psychotherapeutic counseling for the children so that they could work through the familial issues, regardless of whether the counseling was likely to lead to the resumption of contact with their father. The court continued to monitor father's progress in treatment and the children's participation in counseling until January 2018, when the court ordered that father start reunification counseling and directed mother to notify the children's therapists that there was a likelihood that reunification would begin, possibly within a few months, and that the therapist should work with the children to prepare them for reunification therapy.

In March 2018, John filed petitions seeking to terminate father's parental rights under section 7820 et seq.[2] The petitions represented that

---

[2] Section 7820 authorizes a petition to be filed "for the purpose of having a child under the age of 18 years declared free from the custody and control of either or both parents if the child comes within any of the descriptions set out in this chapter." As relevant here, section 7822, subdivision (a)(3) authorizes proceedings to be brought when "[o]ne parent has left the child in the care and custody of the other parent for a period of

John would seek to adopt the children upon the termination of father's parental rights. On that same date, mother filed a consent to the proposed adoption. The family court proceedings were stayed pending the outcome of the proceedings on John's petitions.

Between June 2018 and August 2019, counsel was appointed for father and the children and an investigation was conducted pursuant to section 7851. The court investigator testified at trial and his report was introduced into evidence. The court investigator concluded that father met the criteria for termination of parental rights under section 7825 but that termination of his rights at that time was not in the best interests of the children. John, mother and father also testified.

On August 19, 2019, at the conclusion of the trial, the court found that the father's parental rights should be terminated under section 7825 because he had been convicted of a felony and the facts of the crime were of such a nature so as to prove his unfitness as a parent to have future custody and control of the minors. The court did find that there was insufficient evidence of an intent to abandon to support termination under section 7822. The court advised the parties that a written order was required and counsel for petitioner indicated he would submit a proposed order. The written order confirming the court's oral ruling included the finding, which the court had not made orally at the hearing, that termination of parental rights was in the

one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." Section 7825, subdivision (a) authorizes proceedings to be brought when "[t]he child is one whose parent or parents are convicted of a felony" and "[t]he facts of the crime of which the parent or parents were convicted are of such a nature so as to prove the unfitness of the parent or parents to have the future custody and control of the child."

3

best interests of the children. The written order was filed on October 11, 2019.

Father's notice of appeal was filed on October 21, 2019.

**Discussion**

*1. Timeliness of the Appeal*

John contends that the appeal should be dismissed as untimely. The timeliness of an appeal from a judgment or appealable order entered under section 7820 is governed by California Rules of Court,[3] rule 8.406. (Rule 8.400.) As relevant here, if no referee was involved, rule 8.406 provides that "a notice of appeal must be filed within 60 days after the rendition of the judgment or the making of the order being appealed." As a general rule, under rule 8.406, "if an order is pronounced in open court, the time to appeal from the order begins to run when the order is pronounced." (*In re Markaus V.* (1989) 211 Cal.App.3d 1331, 1335; but see *id.* at p. 1137 [general rule does not apply where statute requires order to be written to be effective]; see also *In re Alyssa H.* (1994) 22 Cal.App.4th 1249, 1253-1254 [appeal from order terminating parental rights was untimely where notice of appeal was filed 64 days after court pronounced order in open court]; *In re Ryan R.* (2004) 122 Cal.App.4th 595, 599 [order terminating parental rights was not required to be written to be effective, and thus time for noticing appeal was triggered when court orally pronounced order].) While the court here announced its ruling at the conclusion of the trial, the court's direction to counsel to prepare a written order and the subsequent inclusion of additional written findings in that order suggests that the court did not intend its oral ruling to be effective until the written order was entered. (*Laraway v. Pasadena Unified School*

---

[3] All rule references are to the California Rules of Court unless otherwise noted.

4

*Dist.* (2002) 98 Cal.App.4th 579, 583, [order which contemplates "further action, such as the preparation of another order or judgment" is not appealable]; *Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 122-123 [minute order directing party to prepare a judgment was "a mere preliminary entry authorizing the subsequent judgment, did not finally dispose of the matter, and was not a final appealable order"].) Accordingly, father's notice of appeal, filed within 60 days of the entry of the written order, was timely.[4]

### 2. *Termination of Parental Rights Under Section 7825*

"The termination of parental rights is 'a drastic remedy to be resorted to only in extreme cases.' [Citations.] [¶] The 'fundamental' nature of parental rights requires that there be clear and convincing evidence of the facts

---

[4] We note briefly that father's argument that the local rules of the Contra Costa County Superior Court required the filing of a written judgment is incorrect. Contra Costa County Local Rules of Court, rule 5.10, on which father relies, generally governs the submission of proposed orders in family law matters but does not require a written order when terminating parental rights. Subsection (a) of the rule reads, "The Court may consider signing, at the time of hearing, proposed orders attached to the moving or responsive papers or those orders prepared by either party in court immediately following the hearing. Parties are therefore encouraged to submit proposed orders with their moving or responsive papers." Subsection (b) reads, "Where feasible, attorneys directed to prepare an order after hearing should prepare and submit the order to the Court on the day of the hearing. If that is not feasible, the Court will expect the parties' full compliance with the timing requirements of California Rules of Court, Rule 5.125. . . . Failure to submit Orders After Hearing in accordance with Rule 5.125 may result in the imposition of sanctions." Moreover, local rule 5.10 is located in division 1 of title 5, which applies to the family law department, not division 2 which governs juvenile court matters. As noted above, for purposes of appeal, an action to free a child from parental custody and control is governed by the rules applicable to juvenile court proceedings.

Father's request for judicial notice of the October 17, 2019 notice of entry of judgment and the motion for constructive filing of his notice of appeal are denied.

necessary to terminate such rights. [Citations.] This standard mandates ' "that the evidence be ' "so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind." ' " ' [Citations.] [¶] The decision to terminate parental rights lies in the first instance within the discretion of the juvenile court, and will not be disturbed on appeal absent an abuse of that discretion. [Citation.] . . . With respect to challenged factual findings, we will affirm 'if there is any substantial evidence to support the trial court's findings,' i.e., 'if the evidence is reasonable, credible and of solid value—such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence.' " (*In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1535-1536; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 ["[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof."].)

As noted above, section 7825, subdivision (a) provides for the permanent termination of parental rights where both of the following requirements are satisfied: the child's parent or parents are convicted of a felony and the facts of the crime are of such a nature as to prove the unfitness of the parent or parents to have the future custody and control of the child. Section 7825 "focus[es] . . . on the *parent,* 'requir[ing] clear and convincing proof of the parent's unfitness to have the future custody and control of the child,' and such unfitness must be demonstrated by the facts underlying a felony conviction." (*In re Baby Girl M.*, *supra,* 135 Cal.App.4th at pp. 1536-1539.) Nonetheless, in making the assessment under section 7825, the

6

"paramount responsibility" of the court is to determine what is in the children's best interests. (*In re James M.* (1976) 65 Cal.App.3d 254, 264; see also *In re Terry E.* (1986) 180 Cal.App.3d 932, 950-951 [section 7825 "concerns itself with the *current* parent-child relationship"].)

Here, the court found that the children's father was convicted of a felony, the facts of the crime prove his unfitness to have custody and control of the child, maintaining his parental rights would be detrimental to the children, and termination of parental rights will serve the best interests of the children.

Contrary to father's suggestion, the facts of his crime are sufficient to establish his unfitness to parent his three younger daughters. A court determines parental unfitness through the use of direct indicators, such as "indications of violence, lewd behavior, use of the family home, harm to family members, and involvement or victimization of minors." (*In re Baby Girl M.*, *supra*, 135 Cal.App.4th at p. 1544.) Here, father pled guilty to sexually penetrating his eldest daughter when she was 17 years old. According to the police report, summarized in the investigator's report, the victim was awakened on morning of May 30, 2012, by her father stroking her arms and legs. He continued to touch her over her clothes on her hip, stomach, waist and breasts. After about two minutes, he left but returned shortly thereafter and climbed under the covers. He pulled down her pajama pants, moved her underwear aside and penetrated her vagina with his hand. He then proceeded to orally copulate the victim and rubbed his erect penis on her underwear, over her vagina, before climbing off of her to masturbate in

the bathroom.[5] Based on these facts, the investigator concluded, "In the commission of his felony, [father] engaged in lewd/sexual acts that victimized a minor who was a family member. His acts are direct indicators of parental unfitness to have future custody and control of [the children]." At trial, the investigator confirmed that it was "fairly clear that the nature of the conviction" made father unfit as a parent to have custody and control of the minors.

Father's reliance on *In re Terry E., supra,* 180 Cal.App.3d 932 is misplaced. In *Terry E.,* the mother was convicted of various sex crimes committed in concert with her then-boyfriend against her boyfriend's ex-wife. (*Id.* at p. 939.) The court concluded that the order terminating her parental rights was not supported by the evidence where conditions had changed substantially since the time of the mother's offenses and "the only evidence relating to [her] ability to properly care for her children [at the time of the hearing] was that [she] had been rehabilitated during her three years and eight months of incarceration." (*Id.* at p. 950*.)* The court also noted that there was no evidence on which a "trier of fact could objectively find a reasonable probability that the conditions, i.e., the criminal disposition of the parent which gave rise to the felony convictions would continue in the future to render the parent unfit to care for the child." (*Id.* at p. 952.) Here, however, the facts of father's convictions support a reasonable inference that father would pose a danger to his daughters. (See *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 751 [A parent who abuses one child, sexually or physically, may pose a "serious threat" to their other children, because an

---

[5] The investigator's report also details two police reports in which the parents of other girls reported inappropriate contact between father and their daughters.

"abusive parent's risk of recidivism is not necessarily limited to the parent's previous victim."].) Unlike the mother in *Terry E.*, the father here made no showing of rehabilitation sufficient to rebut the reasonable inference drawn from the evidence. We do not suggest that a parent convicted of molestation can never be rehabilitated. But while father professed his own reformation, he provided no expert or other evidence to support his self-serving testimony.[6]

On the record before us, we cannot say that the court abused its discretion in concluding that termination of father's parental rights was in the best interest of the children.[7] A determination of the children's best interests requires consideration of the *current* parent-child relationship. (*In re Terry E., supra,* 180 Cal.App.3d at p. 950.) Here, the youngest daughter had no relationship with her father. She was in infant when the was convicted and has had no contact with him since. In fact, she believed that John was her father until these proceedings began.

According to the investigator, when asked about her father, the middle daughter told him that "the last time she saw her father was the day after he

---

[6] Contrary to father's argument, the family court's order that the children begin discussing reunification with their therapists is not substantial evidence of father's rehabilitation sufficient to rebut the reasonable inference that he continues to pose a threat to his children. While father argues that the court's order was "presumably . . . due to his performance on parole and participation in his various programs, including A Step Forward and his completion of apology letters," none of that evidence was presented to the trial court in these proceedings.

[7] Father argues that the court failed to make the necessary finding regarding the children's best interests because the oral pronouncement of judgment controls over the subsequently entered written judgment. As discussed above, however, the court made only an oral ruling and directed that a written judgment be prepared. The written judgment, which contains the necessary findings, is the only judgment that was entered.

9

was released from jail. She said she wasn't sure why but she didn't miss him while he was in jail. . . . [She] isn't afraid of her father and doesn't really think of him." She also indicated that she did not want to attend the hearing because it would make her uncomfortable to be in the courtroom with her father. The investigator's report includes a statement by her most recent therapist that the girl "views her step-father (John K.) as her 'dad' and her biological father is a stranger to her who has hurt her sisters." According to the therapist, the girl "fears for her safety as well."

When the oldest of the three children was interviewed by the investigator, she told him the last time she saw her father was when she visited him in jail. "She doesn't miss her father, but misses the idea of him. [She] said that she can't see past what he did. . . . [I]t changes how she looks at him. . . . [S]he realizes how much he manipulated people. [¶] . . . [S]he has nightmares that her father has molested her or her siblings." She indicated that she would be okay with testifying at trial because "that way he can know what she thinks and can stop trying to contact her." According to her most recent therapist, the girl "has nightmares about being raped by male friends that are triggered whenever there is talk of reunification. [She] has vivid memories of her father's violence to her, her siblings and her mother." The therapist opined that the girl "was not ready for reunification and may never be while she is a minor."

This evidence demonstrates the absence of any current parent-child relationship worthy of maintaining. The court did not abuse its discretion in finding that the termination of parental rights would not be detrimental to the children.

Father forfeited the argument asserted on appeal that the court erred by failing to interview the children. At the conclusion of the mother's

testimony, minors' counsel inquired as to the timing of the children's testimony. When the court questioned whether their testimony was necessary, father's counsel stated, "Under [section] 7891, there [are] provisions for the minors to testify in chambers . . . to express their thoughts and feelings about the proceedings, . . . the parents, . . . [and] preference as to custody." Petitioner's attorney agreed that it is not "require[d]" but argued the children should be permitted to testify. Petitioner's counsel explained, "I didn't cross-examine the court investigator at length because I anticipated having the children being able to testify as to their wishes." He continued, "The court has testimony from the court investigator that . . . minors expressed to him that they didn't wish to be adopted. That's different than the testimony that was contained in the report." When the court confirmed that it did not believe the children's thoughts regarding adoption were relevant, petitioner's counsel agreed that he would not call them. Father's counsel contributed nothing to the discussion beyond the initial statement quoted above and certainly did not argue that the court was required to interview the children in chambers. Even assuming the interviews are required under section 7891 (see *Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 171), any error was harmless as the record amply reflects the children's feelings regarding their relationship with their father.[8]

---

[8] Contrary to father's suggestion, the court was not required to consider the children's feelings about adoption in determining their best interests. (See *In re Marcel N.* (1991) 235 Cal.App.3d 1007, 1012 [section 7825 proceedings are not limited to situations where adoption is contemplated]; *T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1440 [mother has standing to petition for the termination of father's parental right where adoption is not contemplated].) In any event, to the extent that the record reflects that the children may have had some ambivalence regarding adoption, they clearly wanted no relationship with their father.

Finally, the trial court could reasonably reject the investigator's opinion that the best interest of the children required deferring termination of father's parental rights until the children addressed their family issues in reunification therapy. The court investigator opined that the petitions were filed as a means to avoid the reunification therapy ordered by the family court and that termination of parental rights before completion of reunification therapy would be detrimental to children. His opinion is based on concerns expressed by the child-custody counselor appointed by the family court and the children's therapists that the children are suffering because of father's crime and that they need to work through their feelings about reunification with their father in a therapeutic setting, whether or not reunification actually occurs. John's statements to the investigator support the investigator's opinion that the petitions were filed, at least in part, to prevent the children from being compelled to participate in reunification therapy as ordered by the family court. John told the investigator that he filed the petition for the "children's safety" and that after "father filed for reunification in 2016," he and mother "decided to look at terminating [father's] parental rights." It is not apparent why any help the children may receive in therapy will be less effective following termination of the father's rights, and that suggestion is unsupported by any expert opinion.

Contrary to father's argument, there is little if any relevance to the fact that John did not file his petition to adopt the children at the same time that he filed the section 7820 petition. John explained to the investigator that he and mother started talking to the minors about adoption the previous year, in 2018, and his benefits at work changed to include legal benefits that allowed them to obtain legal assistance with the adoption. Nothing in the record

12

suggests that John is not prepared to move forward with the adoption following termination.[9]

It is undisputed that father's criminal conduct had severe adverse impacts on all of his children. The evidence discussed above further establishes that the children have no existing relationship with him that weighs against termination. The children are entitled to have this chapter closed and to be provided the security and stability that comes with adoption. (§ 7800 [The purpose of section 7825 "is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life."].)

**Disposition**

The order terminating parental rights is affirmed.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

---

[9] Moreover, as discussed above, proceedings under section 7825 do not require that adoption be contemplated to sever an unfit parent's rights. (*In re Marcel N.*, *supra*, 235 Cal.App.3d at p. 1012.)